KAREN GARNER, Plaintiff-Appellant, *v.* JOHN THOMAS GARNER,
Defendant-Appellee.

Second District (2nd Division)    No. 76-281

Opinion filed January 5, 1977.—Rehearing denied March 18, 1977.

Jerome Marvin Kaplan and Allan Niederman, both of Chicago, for appellant.

Manuel A. Segarra, of Chicago, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiff appeals from a judgment entered May 20, 1976, modifying a divorce decree by transferring the custody of William (the youngest of the couple's three minor children) from that of the plaintiff (mother) to defendant (his father), and denying plaintiff's counterpetition requesting an increase in child support payments and other relief.

On June 14, 1972, plaintiff was granted a divorce from the defendant on

the ground of mental cruelty in a brief and uncontested proceeding. The decree awarded to plaintiff custody of the three minor children, Kristen, Debra and William, then 13, 11 and 9 years old respectively. This was in accordance with a marital settlement agreement executed by the parties which was incorporated and merged into the divorce decree. It required the defendant to make child-support payments of $183 per month for each child to continue beyond majority if the child is attending college or professional school, but to cease upon graduation therefrom (par. E, article II), and required defendant to pay in addition to child support their college tuition or other higher education and other expenses "to the extent he is financially able," and required the plaintiff, in such case, to "pay for room and board and personal articles." The agreement also required the defendant to hold the sum of $9,000 (which plaintiff later paid to him pursuant thereto out of the proceeds of the sale of their marital home) "in trust and/or invested for the benefit of the children to assist in paying for their college education." It provided that plaintiff "shall have the right to work without prejudice to her rights" to child-support payments, "and without the proceeds of said employment being used as the basis for a reduction" in child support payments. Article IX of the agreement, merged in the decree, provides:

"In the event either party willfully or unreasonably fails to duly perform his obligations and undertakings hereunder, and as a result the other incurs any expenses, including legal fees, to enforce the provisions and terms of this Agreement, the obligator shall indemnify the other and hold him harmless from such expenses."

In December, 1975, the defendant filed a petition seeking a change in custody to himself alleging, *inter alia*, that plaintiff and defendant had remarried subsequent to the divorce and that plaintiff's present husband (Richard Meyers) has interfered with defendant's reasonable visitation with his children, that some of the children have indicated a desire to live with defendant, and that defendant's earnings have been reduced and plaintiff's have been increased since the entry of the divorce decree. Plaintiff denied the pertinent allegations of the petition and filed her counterpetition asking for an increase in child-support payments and for an order requiring defendant to pay medical and psychiatric counseling expenses for their two daughters, college expenses for their daughter, Kristen, and for plaintiff's attorney fees.

At the hearing on the petitions on April 2, 1976, the defendant testified, over plaintiff's objection on the ground of hearsay, to a conversation with his son, William, in which William told defendant that plaintiff's present husband told William "he could tell me things about you [defendant] that would make me want to change my mind," and that "they can't get enough milk and orange juice." The defendant characterized these as

"little things." He testified that in a conversation in October 1975, William told defendant that he would like to live with his father becase "he is happier" at defendant's house; that plaintiff is "a nice person" but "does not show affection"; that his present wife (who has custody of two children from her prior marriage) would "be able to take good care of William"; that his children are "not allowed to have friends in when the adults are gone"; and that the only material change in the way that the children live since the entry of the divorce decree is that they now "live in a very big pretentious house north of Marengo."

Defendant's own gross earnings as an airline pilot for 1971, the year preceding the divorce, were $19,646, while for the year 1975 his gross earnings were over $29,000. Effective in January 1976 his earnings would be increased to about $31,000 per year from the airlines. In addition to his regular occupation defendant is sole owner of a small corporation which for the year 1975 had a taxable income of $9627, after deductions which included payments of defendant's medical and dental insurance, business entertainment and travel expense, and depreciation and all expense for one of defendant's automobiles.

Plaintiff is employed as a full-time nurse at the Elgin Mental Health Center. Her gross earnings for 1975 from her employment were $15,500. She has been a registered nurse for 17 years and was so employed at the time of the divorce. She testified that, except for one evening a week when she attends an evening college class, she spends her evenings at home with the children. Her present husband, Richard Meyers, is an airline pilot.

The evidence shows that at the time of the hearing the oldest child, Kristen, was a high school senior, "a very good student," and a "National Merit" scholar. The plaintiff and defendant both testified that Lawrence University at Appleton, Wisconsin, where the yearly tuition is about $3250 is the "college of her [Kristen's] choice." Kristen's next two choices at that time were Knox College (Galesburg) and St. Mary's (Winona, Minnesota). Her interest is in the field of psychology. Plaintiff testified that when she attempted to discuss these college plans with defendant he said he wanted Kristen first to attend a two-year junior college program which he said is "all I can afford, and that is all she needs"; that plaintiff told defendant that school counselors had advised her that Kristen ought not to attend a two-year junior college "because a psychology program starts at least by her Sophomore year". As to the $9,000 which defendant received from the plaintiff "in trust * * * for the benefit of the children to assist in paying for their college education," the defendant testified that he "put it in certificate savings."

At a hearing on May 20, set by the trial judge for the announcement of his decision, he informed both counsel that on a date he did not specify he

talked in his chambers with the three minor children and thereafter with William, and received a letter dated April 19 from the minor son, William. (Those interviews were without the prior knowledge and consent of plaintiff's counsel and presumably of defendant's counsel.) William's letter related a conversation with his "step-dad" (plaintiff's present husband) in which the latter called his "dad [defendant] some names that I do not like at all," and inquired in a postscript whether "if I am able to move, am I allowed to take all of my belongings including my bedroom furniture?"

The trial judge then announced that he was (1) granting William's request to live with his father forthwith (*i.e.*, changing custody of William to the defendant, reducing child support by $183, and permitting William to take his bedroom furniture), (2) denying plaintiff's request for increased child support payments, and (3) denying plaintiff's request for attorney fees. As to Kristen's college choice and expenses the trial judge stated: "[I]f counsel and their clients can't work out the college business amongst themselves * * *, then I will deny that." The order entered by the court so ordered except that it provided that in the event the issues of visitation rights, college education and vacations "cannot [be] resolved within a reasonable time, the court will resolve them upon proper motion," set appeal bond at $5,000 and specified that "this is a final order; with prejudice."

■■ ■ The first issue presented is whether the trial court erred in changing William's custody from that of his mother to that of his father. The plaintiff contends that the petition did not allege, and that the evidence adduced at the hearing did not establish that there was any material change in circumstances involving William's welfare to warrant a custody change, and that the child's preference alone for such change, while a factor to be considered, is not a sufficient change of circumstances. We agree.

The law relating to petitions for change of custody is well settled in Illinois. The primary concern of the courts is the best interests and welfare of the children. (*Nye v. Nye* (1952), 411 Ill. 408, 415.) In *Wells v. Wells* (1976), 36 Ill. App. 3d 488, 490, we said:

"The courts are mindful that stability in a child's environment is a weighty factor [citation], and, in that concern, a sound principle of law has evolved: custody will not be altered unless there has been a change in circumstance which involves the child's welfare. [Citations.] One of the factors to be considered in a change of custody action is the preference of the child involved [citation], although it has been repeatedly stated by the Illinois courts that the child's preference for a change of custodial parent, without showing that the welfare of the child is affected, is not a sufficient

change of circumstances to warrant a custody change. [Citation.] When the child's desire, however, is based upon reasons related to its best welfare, the child's preference should be given serious consideration. [Citation.]" (36 Ill. App. 3d 488, 490.)

We are unable to say on this record that William's preference for a custodial change is sufficient. The trial judge's interview *in camera* with William and the other children, after proofs were closed, was without the knowledge or prior consent of either counsel or of the parties. His later *in camera* interview with William was also without prior notice, knowledge or consent. The trial judge did not even disclose the substance of such interviews when announcing his decision. (See *Seniuta v. Seniuta* (1975), 31 Ill. App. 3d 408, 416; *Oakes v. Oakes* (1964), 45 Ill. App. 2d 387, 394-95.) Therefore, there is no evidence of a material change in circumstances of the parties since the date of the divorce decree which would affect the child's welfare and his best interests so as to warrant a custodial change. It is clear to us from this record that the trial judge abused his discretion in transferring William's custody to the child's father.

Next plaintiff argues that the trial court should have ruled on plaintiff's request that defendant be required to pay Kristen's college tuition expenses in compliance with the marital settlement agreement and the divorce decree. We agree. That agreement and decree expressly required (at a time when defendant's annual income was at least $10,000 less than it is now) that defendant pay "to the extent he is financially able" the college or professional school tuition and other expenses (except for board and personal articles) of his minor children. In addition he is and has been holding in trust for the minor children the sum of $9,000 (plus interest accrued thereon) to assist him in paying such expenses. Both counsel advised the court, during oral argument, that Kristen is now attending Lawrence University, and that the defendant has not undertaken to discharge his obligation to pay her college tuition expenses.

■■ Under the circumstances here the trial court should have made a determination of the defendant's obligation under paragraph E, article II of the marital settlement agreement, including the amount the defendant should pay, if anything, in accordance herewith.

Plaintiff contends that the trial court erred in denying her request for an increase in child support payments. There is no question but that the cost of living has increased since the date of the divorce decree and that plaintiff's expenses for maintaining the children probably have mounted. The defendant's gross annual income has increased by about $10,000 and plaintiff's annual income is $15,500. She points to that provision of the marital settlement agreement under which earnings from her employment may not be used as a basis for any reduction in child support payments from the father. In view of the defendant's obligation to pay

college expenses for his minor children we conclude that upon remand the trial court should be given an opportunity to consider that obligation of the defendant in connection with his obligation to maintain child support payments. Based thereon the trial court can determine whether the defendant is financially able to pay increased child support and whether he should be required to pay additional amounts for extraordinary medical or psychiatric care for any of his children.

■■ We note that in denying plaintiff's request for attorney fees the trial court disregarded the express provision of article IX of the marital settlement agreement. Such denial was error. Upon remand plaintiff should be given leave to file a petition for reimbursement of "expenses including legal fees" to enforce the terms of the marital settlement agreement. This will enable the trial court, after hearing, to make reasonable allowances for such expenses and fees.

For the foregoing reasons this case is reversed and remanded with instructions to vacate the order of the circuit court of Kane County insofar as it transferred William's custody to the father, for a further hearing on the defendant's obligation to pay college expenses for Kristen, medical expenses for the children, and plaintiff's attorney fees and expenses, and to determine whether the child support payments to be made by the defendant should be increased.

Reversed and remanded with directions.

GUILD, P. J., and SEIDENFELD, J., concur.