*In re* CUSTODY OF WILLIAM D. ANDERSON *et al.* (Laurie M. Anderson, Petitioner-Appellant, v. William D. Anderson, Jr., Respondent-Appellee).

Second District   No. 2—85—0789

Opinion filed July 30, 1986.

Charles W. Clark, of Madsen, Baudin & Briscoe, of Crystal Lake, for appellant.

William G. Rosing and Stephen G. Applehans, both of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

On January 21, 1985, petitioner, Laurie M. Anderson, filed a petition for leave to remove her children from the State of Illinois during the children's normal school year. The petition was contested by respondent, William D. Anderson, Jr., petitioner's ex-husband. After a hearing, the circuit court of McHenry County denied the petition and

this appeal followed.

The parties were married on August 16, 1975. During the course of their marriage two children were born, William D. Anderson and Brian M. Anderson. Respondent filed for dissolution of marriage in the circuit court of McHenry County on January 20, 1984. On March 9, 1984, petitioner was found in default and a judgment of dissolution of marriage was entered. At the time of the dissolution, William was eight years old and Brian was five years old. Incorporated into the judgment of dissolution was a written separation agreement entered into between the parties and dated March 1, 1984. This agreement provided in part for joint custody of the children, petitioner to have residency of the children during the school year and respondent to have residency of the children during the summer vacation months. The agreement also provided for reasonable visitation rights for the nonresidential parent.

On January 21, 1985, petitioner filed her petition to modify the judgment of dissolution of marriage, requesting leave to remove the children from the State of Illinois to the State of Arizona during the school year when she normally had residency of the children. Petitioner's petition did not seek to terminate the joint custody of the children. It was alleged that petitioner was a registered nurse, that Arizona provided an opportunity for advancement in her profession, that petitioner had relatives in Arizona, and that Arizona would provide a stable environment for the children.

The hearing on the petition began on January 30, 1985. Petitioner testified that she had graduated with honors from the nursing program at Elgin Community College in June 1984, and thereafter was employed on the day shift at Royal Terrace Nursing Home in McHenry for $9 per hour. Petitioner was employed as a charge nurse and was responsible for supervising licensed practical nurses. Petitioner stated that she was not satisfied with her employment at the nursing home, that a high degree of nursing skill was not required, and that she wanted to advance in nursing. Petitioner had sought employment at numerous area hospitals, but received only one offer of employment, a position on the night shift at McHenry Hospital. Petitioner declined this offer because of the hours as she has refused to work nights because of the needs of the children at home.

Petitioner visited Phoenix, Arizona, in January 1985 to seek employment as a registered nurse. She was offered a part-time day-shift position as a registered nurse at Humana Hospital in Phoenix. The position was for 24 hours per week and paid $11.50 per hour. She was also offered employment with Med-Pro, an agency that supplies tem-

porary nursing services to local hospitals. The Med-Pro position paid between $12 and $19 per hour.

While in Phoenix, petitioner placed a $50 deposit on a two-bedroom apartment. Rent at the Phoenix apartment, which petitioner testified is similar to her current Crystal Lake apartment, is $330 per month, while her Crystal Lake rent is $420. Petitioner also looked into educational facilities in Phoenix and selected a parochial elementary school located close to the apartment she had found. Petitioner visited the school and found the curriculum similar to that of their Crystal Lake school. She further testified that she felt Phoenix would provide a good environment for the children because she had family members, including her mother and brother, who lived in the area.

Petitioner called two additional witnesses during her case in chief. Jacquelyn Charles, a nursing instructor at Elgin Community College, testified that nursing-home care would not be stimulating for someone who wanted to grow and advance in nursing and that hospital nursing positions were difficult to obtain in the McHenry area. Petitioner also called respondent to testify as an adverse witness. Respondent testified that he had residency of the children during the summer months and every other weekend and holiday during the school year. Respondent also stated that he did not feel it would be fair to the children or himself to withdraw the children from his influence.

The only witness who testified during respondent's case in chief was respondent himself. Respondent again testified that he had residency of the children during the summer vacation months and on every other weekend and holiday. He also stated that he often took the children to his trailer at a recreational center, that the children had a good relationship with his parents who resided near them, that the children often spent time with other relatives at the recreational center, that he called the children every night, and that he would visit the children at school when his work schedule permitted.

At the close of the evidence on February 1, 1985, the trial court denied petitioner's petition to remove the children. Petitioner thereafter filed a post-trial motion to reconsider which was denied on September 4, 1985. Petitioner then filed her notice of appeal on October 3, 1985.

Petitioner's first argument is that the trial court erred, as a matter of law, in denying her petition to remove the children from Illinois. Petitioner contends that since she had made a *prima facie* case for removal and respondent then failed to met his burden of going forward with the evidence, the court was required, as a matter of law, to grant her petition to remove.

■■■ Under section 609 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1985, ch. 40, par. 609), the party seeking the removal has the burden of proving that such removal is in the best interest of the children. This burden remains with the petitioner throughout the case. (*In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 523.) The burden of going forward with the evidence, however, switches to the respondent if the petitioner makes out a *prima facie* case. (115 Ill. App. 3d 521, 523.) Further, in a nonjury case, section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110) specifically requires the trial court to weigh the evidence when ruling on a motion for judgment at the close of the plaintiff's case. That is to say, instead of considering the evidence in the light most favorable to the plaintiff as in a jury trial, the trial court must consider the weight and quality of the evidence, which includes any evidence favorable to the defendant. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.) The trial court does not simply decide if the plaintiff has made out a *prima facie* case, but must, after weighing the evidence, make a determination of whether the plaintiff has met her burden of proof on every element essential to her case. (81 Ill. 2d 151, 154-55.) Where such a motion is denied, it necessarily follows that the plaintiff has carried her burden of proof up to that time, and that the defendant must then present some new and additional evidence in his favor or suffer a judgment against him.

■ It is not disputed in this case that petitioner made a *prima facie* case for removal; nor is it disputed that respondent made a motion for a directed finding at the close of petitioner's case, and that the motion was denied. Therefore, unless respondent introduced some new evidence during his case in chief, the trial court should have granted petitioner's motion for removal. Petitioner argues that respondent failed to present any new evidence because his testimony during his case in chief did not present any substantive evidence which had not already been disclosed by his earlier testimony as an adverse witness during petitioner's case in chief.

Contrary to petitioner's contentions, however, our review of the record shows that respondent did present new and additional evidence not brought out during petitioner's case in chief. While respondent had originally testified in general terms as to how often he had residency of the children, his later testimony went into far greater detail and added many additional facts. For example, respondent testified that he calls the children almost every evening, that he has the children's school send him their grades and reports and has talked personally with their teachers, that on summer weekends he takes the

children to his trailer in a recreational area where they are with their paternal grandparents and other relatives, that the children often see and get along well with their paternal grandparents, and that the move to Phoenix would put the children in their fourth different school. Respondent's later testimony gave the trial court a clearer and fuller picture of his current involvement in the raising of his children and allowed the court to better understand the effect the proposed move would have on their relationship. We hold, therefore, that the respondent did meet his burden of going forward with the evidence.

Petitioner next argues that the trial court's denial of her petition to remove was against the manifest weight of the evidence.

A court may grant to a custodial parent leave to remove a child from Illinois when such removal is in the child's best interest. (Ill. Rev. Stat. 1985, ch. 40, par. 609.) In deciding whether removal is in the child's best interest, our courts look primarily at three factors. First, the courts consider whether there is a sensible reason for the move. Career and/or financial advancement of the custodial parent or a new spouse has been held to be a sensible reason for removal where similar advancement is not available locally. (See *In re Marriage of Brady* (1983), 115 Ill. App. 3d 521; *Gray v. Gray* (1978), 57 Ill. App. 3d 1.) Second, the courts look at whether the move is consistent with the child's best interest. Because a child often receives little, if any, demonstrable benefit from moving, a direct benefit need not be shown. An indirect benefit is sufficient and may be shown by the fact that the custodial parent will be a happier and better adjusted parent. (*In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 345.) Also of importance is the quality of the education, housing and child care available at the new residence. Third, the courts look at whether the removal will prevent reasonable visitation by the second parent. Removal should not be allowed if it would prevent reasonable visitation. (86 Ill. App. 3d 341, 346.) A trial court's determination in granting or denying removal will not be reversed unless it is clearly against the manifest weight of the evidence. *Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 788.

In the present case, although petitioner testified that she wished to move to advance her career and financial well-being, her new position with Humana Hospital in Phoenix is only part-time. Further, petitioner's plan to supplement that income with a second nursing job with Med-Pro is somewhat speculative because Med-Pro only supplies nursing services to local hospitals when needed and cannot guarantee her consistent weekly hours. Thus, petitioner's claim that the move will enhance her financial well-being is uncertain at this time.

Petitioner's claim that she cannot find comparable employment in this area is also questionable. While petitioner was unable to obtain daytime hospital employment within the immediate Crystal Lake area, she admitted she had not looked for hospital employment in the greater Chicagoland area because it was not feasible to work that far from her Crystal Lake apartment and the children's school. We fail to follow petitioner's argument that it would be worth moving to Arizona to find a hospital nursing position but not worth moving within the Chicagoland area to find a similar position.

Lastly, we note that in this case the parents have joint custody of the children. It is clear that respondent has taken an active and extensive role in raising his children under the parties' joint-custody agreement. Respondent has physical residence of the children every other weekend and holiday and during the summer vacation months. Moreover, he calls the children almost every evening, has their school records forwarded to him, and has spoken directly to their teachers. A truer joint-custody relationship would be hard to imagine. While removal of the children to Arizona would not prevent respondent from having physical residence of the children during the summer vacation months, it would eliminate or greatly reduce respondent's involvement with them during the school year. Contrary to petitioner's argument that removal would not cause a breakdown in respondent's relationship with his children, their removal to Arizona would seriously interfere with respondent's custody rights under the joint custody agreement.

In light of the uncertainty of petitioner's Arizona employment, the fact that petitioner might well be able to find similar employment in the Chicagoland area, and the fact that removal would severely intrude upon respondent's joint custody rights, we cannot say that the trial court's denial of petitioner's motion to remove was against the manifest weight of the evidence. For the reasons stated herein, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.