*In re* MARRIAGE OF MARY D. MORRISROE, f/k/a Mary D. Tylenda, and n/k/a Mary Diane Haley, Petitioner-Appellee, and JAMES J. MORRISROE, Respondent-Appellant.

Second District   No. 2—86—0753

Opinion filed May 13, 1987.

Ivan H. Tepper, of Ori, Tepper, Fox, Maley & Gilleran-Johnson, of Waukegan, for appellant.

Elizabeth V. Maring, of Hall, Holmberg, Roach, Johnston, Fisher & Lessman, of Waukegan, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, Mary Diane Haley, f/k/a Mary D. Morrisroe, filed an amended petition seeking post-decree relief against the respondent, her former husband, James J. Morrisroe. The petition sought reimbursement and payment for medical and education expenses and an increase in child support for the parties' two minor children. The amended petition also sought to have the respondent held in contempt of court for failure to comply with a previous court order; however, that count was dismissed prior to hearing. Following a hearing, the trial court increased child support from $175 per week to $1,250 per month; awarded petitioner a judgment against the respondent in the amount of $4,265.63 for medical expenses; ordered the respondent to continue paying the orthodontist and periodontist bills for the minor children; ordered the respondent to provide hospitalization insurance coverage for the minor children and pay all extraordinary medical, dental, psychiatric, and psychological expenses for the minor children; and entered a judgment for petitioner and against the respondent in the amount of $5,790.26 for the arrearages in child support and insurance premium payments. Respondent appeals.

On appeal, respondent raises the following issues: whether there was sufficient evidence to justify the increase in child support, and whether certain letters introduced as evidence of the extraordinary medical expenses incurred by the petitioner on behalf of the minor children were properly admitted.

The parties were divorced in 1977. The petitioner received custody of the parties' two minor children, Jamie Marie, then age six, and Andrew John, then age three. Because the respondent had no income at the time of the divorce, no child support was awarded. However, the respondent was required to pay for the extraordinary medical expenses of the minor children.

Prior to the divorce, the parties were involved in two businesses, namely, Junior Cheerleading Association of America and Junior Cheerleading Uniform Service. Following the divorce, the parties each

formed their own company, marketing uniforms by mail order.

On October 30, 1979, the respondent was ordered to pay the sum of $80 per week for child support based upon the petitioner's net annual earnings of $12,000 and the respondent's net annual earnings of $15,000. The respondent was also ordered to obtain comparable hospitalization insurance for the minor children and to reimburse the petitioner for the cost of maintaining such coverage until he secured the hospitalization insurance.

On November 5, 1982, the trial court ordered the child-support payments increased to $175 per week. The respondent was also ordered to obtain a medical insurance policy to cover the needs of the minor children and to continue to reimburse petitioner for the cost of the premiums until he had obtained the coverage. On February 20, 1985, petitioner filed an amended petition seeking reimbursement for educational and extraordinary medical expenses for the minor children not covered by insurance, an increase in child support, and payment of the arrearages in child support and insurance premiums. On April 16, 1985, by leave of court, petitioner filed a list of the qualifications of the various doctors, teachers, and social workers who were treating the parties' minor son, Andrew.

On January 24, 1986, the hearing on the amended petition commenced.

### EXTRAORDINARY MEDICAL EXPENSES

The petitioner testified that the two minor children were now 14 and 11, respectively. The court order of November 5, 1982, required the respondent to pay $175 per week in child support. She also was to receive $100 per month for the medical insurance premium. At the time of the hearing, the respondent was in arrears in the amount of $4,609.90. As shown on the court's exhibit No. 2, she had also incurred bills for the services of Edward D. Zehr, a psychotherapist who was treating Andrew, for various tutors for Andrew, and for some medical treatment for Jamie, all totaling $5,931.33. In addition, she had past due bills for the children's orthodontist and periodontist in the amount of $894.

Although the trial court ruled that the petitioner could not state a diagnosis, she was permitted to testify as to her observations of Andrew's demeanor. According to the petitioner, Andrew has had severe learning disabilities and emotional problems for the past six years. He suffers from dyslexia, is hyperactive, impulsive, and has mood swings. He is on medication from time to time. Due to problems at school, he was placed in a behavior disorder classroom. He also re-

ceives counseling and tutoring. His condition seems to be improving. Plaintiff then sought to introduce petitioner's exhibits Nos. 4 through 8, being, respectively, a letter from Dr. Peter Dwyer, a letter from Lake Forest Pediatrics, two letters from Dr. Richard Kaufmann, and a letter from Edward D. Zehr. Respondent objected to the admission of the exhibits on the basis that the letters indicated purported diagnosis, and the respondent in effect would be barred from cross-examination. The trial court overruled the objection, stating as follows:

"However, the matter before me today concerns the welfare of a minor child. I think the Court has great leeway in admitting evidence concerning the welfare—best interest I think is the correct term, though that's not the standard here, for the minor child. This is the only evidence apparently that is available today. On that basis, I will admit 4 through 8."

### INCREASE IN CHILD SUPPORT

The petitioner testified that she had owned her own company, Cheerleading Fashions by Diane, Inc., since 1978. Her gross income for 1985 was $61,500 and that at present her draw from the company is $3,300 gross per month. Her business is in direct competition with that of the respondent. She estimated that respondent's gross sales over the last three years were over $1 million and that her gross sales in 1982 were $250,000, increasing compounded annually so that in 1985 she hopes to reach $500,000 in sales. Petitioner's exhibit No. 9, her household budget, was admitted into evidence. According to the exhibit, petitioner's total monthly expenses were $4,991. Of that $1,630 was directly attributable to the children. However, the latter figure did not include amounts for food (except lunches), housing, or utilities.

On cross-examination, the petitioner testified that her household expenses had remained the same in 1985 and for some time prior to that. Andrew had never seen a psychologist.

Called as an adverse witness, respondent testified that he marketed cheerleading and band uniforms by mail order through two companies, Young Cheerleaders of America and Parade Time. A third company, Young Gymnasts, USA, had not been marketed yet. Another company, School House, a division of Young Cheerleaders of America, also had not been marketed yet. Respondent had a regular monthly draw of $4,000 gross. His taxes and living expenses were taken out of his check, leaving him with the difference, generally $100 per month. Three years before, he had purchased a building to house his business. The land cost $18,000 and the building $200,000. He also spent

$39,437 in 1985 for a trip which included several European countries for research on gymnastic uniforms. When questioned about certain accounting procedures and decisions made in his business, he contended that he was not qualified to answer such questions and deferred to his accountant on those matters. Respondent's personal tax returns for 1982-84, corporate returns for 1982 (partial), 1983, and 1984, and financial statements for Young Cheerleaders of America for the years 1984 and 1985 were admitted into evidence.

William B. Nystrom, a certified public accountant, testified for the respondent. Comparative financial statements of respondent's business were received as respondent's exhibits Nos. 1 and 2, as well as an analysis of respondent's 1982 through 1984 tax returns. Nystrom testified that the respondent's taxable income for 1982 was $57,127; for 1983, a loss of $6,411; for 1984, he had taxable income of $43,920; and for 1985, his gross salary was $52,000. Respondent appeared to be netting $2,400 per month, and his personal expenses were around $2,400 per month. According to Nystrom, the respondent was not really involved in the bookkeeping or accounting of the business. Nystrom received his information for his compilations from the staff employed by the respondent.

On cross-examination, Nystrom explained that the respondent borrowed money from his corporation to purchase its present building. The corporation pays the respondent $4,000 per month in rent and that money is an expense that is applied to the respondent's loan account, which in turn pays the mortgage on the building. The respondent paid $28,675 to rebate the rent because the accountants felt that the rent was excessive. Nystrom also testified that respondent's bookkeeper made all of the determinations as to what categories expenses were placed in.

Called as an adverse witness, petitioner testified that she determines her own salary and that she takes out $3,800 net per month. In 1982 she earned $37,000 gross; in 1983, $27,000 gross; in 1984, in excess of $40,000 gross; and in 1985, $62,417.40 gross. Called on his own behalf, the respondent testified as to his income and expenses as set forth on respondent's exhibit No. 13, which was admitted into evidence. Respondent's exhibit showed monthly income of $4,000 gross and expenses of $2,511.97, which included the sum of $537.50 for child support.

In his letter opinion, the trial judge stated as follows:

> "Issue is the amount of child support to be paid by James Morrisroe. A wealth of IRS documents and compilations made therefrom have been admitted. The policies, rules and regula-

tions of federal taxation are formulated by the congress and the Internal Revenue Service. These are to achieve national goals—favoring some endeavors and discouraging others—and produce sufficient income for the federal purpose. They warrant the careful attention of state judges, however, they are not conclusive of the state litigation. It is the function of this court to determine the income—payments and benefits—of a non-custodial parent and, with reference to other relevant factors, fix a reasonable and equitable amount of support for minor children.

An example of this distinction is the catelogue [sic] expense of James' enterprize [sic] and of Diane's enterprize [sic]. Diane hired Chicago and Milwaukee photographers; James traveled across the nation to personally photograph high school girls in cheerleading uniforms. Both methods are acceptable for federal purposes. For this state purpose, I will find James' seasonal trips are a benefit to be considered in determining his income for child support purposes. Similarly his trips to Rumania, Finland, England and Ireland to discover the costumes of European gymnasts—I assume that such are not guarded secrets—are, I believe, to be considered. James' no investment acquisition of a quarter of a million dollar office building reflects the acumen of a prudent business man in legitimate tax avoidance but the income and benefit derived therefrom is a factor for state consideration. James and his certified public accountant testified that they did and do not make these decisions but that such are made by a bookkeeper; I do not find their testimony to be creditable.

The above are merely illustrative of the factors considered in determining the ability of James to contribute to the monthly support of the minor children."

The judgment outlined above was entered, and this appeal followed.

The respondent contends, first, that the evidence was insufficient to support an increase in child support.

■ Modification of child support is governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 510(a)). Upon application for a modification of support, the court's paramount consideration is whether a substantial and material change in circumstances has occurred since the entry of the decree which would authorize the court to change the allowance. (*Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 62; Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) The decision to modify rests within the sound dis-

cretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *In re Marriage of Schmerold* (1980), 88 Ill. App. 3d 348, 350.

Our first inquiry is whether or not the petitioner in the case before us established a need for an increase in child support. As this court stated in *Schmerold*:

"In order to establish a substantial change in circumstances the petitioning party must show an increased ability of the supporting spouse to pay and increased needs of the children since the previous order. [Citation.] Where a former spouse's ability to pay is shown, the fact that children have grown older and the cost of living has risen are proper bases for establishing increased need, considering the best interests of the children. [Citation.] The increase in the children's needs must be balanced against the relative ability of the parents to provide for them, and where a change has occurred which creates 'a substantial imbalance between the child's needs and the parent's support capabilities' modification is required. [Citations.]" 88 Ill. App. 3d 348, 350-351.

While there was testimony as to the present ages of the parties' children, the respondent argues that the record here is devoid of any evidence establishing the following factors: that the children's needs and/or expenses have increased; that the cost of living has increased; that additional expenses for the children have been incurred; and what the children's needs and expenses were at the time of the entry of the prior support order.

At the time of the increase in support in 1982, Jamie was 12 years old and Andrew was 9. There was testimony from the petitioner as to Andrew's emotional and attendant education problems, which she indicated had been present for the past six years. She testified also as to the help, both medical and educational, which she was required to obtain for Andrew. An exhibit showing her current household expenses was admitted, as well as evidence as to her income since 1982.

While the needs of the child and the financial status of the custodial parent are important factors in making the decision to modify, the court must also consider the financial resources of the child, the financial status and needs of the custodial parent, the standard of living the child was accustomed to prior to the dissolution, and the physical and emotional needs and educational needs of the child. *In re Marriage of Daniels* (1983), 115 Ill. App. 3d 173, 176.

We observe that both parties have bettered themselves financially

since the setting of child support in 1980. There was testimony that the respondent's company had gross sales in excess of $1 million, while the petitioner's company was projected to reach $500,000 for 1985. Respondent's salary was $4,000 per month gross. After his taxes and living expenses were deducted, he was left with generally about $100 per month. On the other hand, the petitioner's testimony regarding her salary was somewhat inconsistent. On direct examination she testified that she had paid herself a draw of $3,330 gross for the month of January 1986. However, testifying as an adverse witness, she stated that she took a draw of $3,800 net. She also testified that she determined her own salary.

We observe further that in 1982, the time of the last increase in child support, the respondent's yearly salary was $70,000 gross, while the petitioner's was $37,000. Although the gross sales of his company increased yearly, the respondent's income in 1985 was $52,000 gross, while the petitioner's gross income for that time period was $62,417.40. Although petitioner testified as to the current expenses for the children, there was no evidence as to how the children's needs had increased since 1982. Petitioner admitted that Andrew had suffered from emotional problems for the previous six years, which would have been prior to the 1982 increase in child support. Nor will this court infer that the expenses have increased absent a showing of increase.

■ In its letter opinion quoted earlier, the trial court alluded to the tax planning on the part of the respondent, especially in connection with the building he purchased to house his company, which in effect produced a lower net income to the respondent. However, without sufficient evidence that the needs of the minor children have increased, modification of child support is not warranted here. While we are mindful of the rule that absent an abuse of discretion we may not substitute our judgment for that of the trial court (*Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 62), based upon the record before us, we conclude that the trial court abused its discretion in modifying the amount of respondent's child-support obligation.

■ Next, the respondent contends that the trial court erred in admitting the letters from the various doctors who treated Andrew as proof that the medical expenses were extraordinary ones. Over the respondent's objection, the trial court admitted the letters on the basis that the trial court had "great leeway" where the welfare of the child was concerned.

A letter is characteristically "hearsay" in nature (*Baehr v. Health & Hospital Governing Com.* (1980), 86 Ill. App. 3d 43, 46.) A letter is

hearsay as to the truth of its contents and is inadmissible unless it falls within one of the numerous exceptions to the hearsay rule. (*Erickson v. Ottawa Travel Center, Inc.* (1979), 69 Ill. App. 3d 108, 111.) It has been held that it is not error to exclude a letter from evidence where it was unaccompanied by any proof of the unavailability of the writer or his presence for cross-examination. *Anderson v. Hyster Co.* (1977), 56 Ill. App. 3d 41, 51, *aff'd* (1979), 74 Ill. 2d 364.

■ Here there was no explanation for the absence of the doctors who authored the letters. Petitioner has not cited any exception to the hearsay rule which would allow admission of the letters into evidence. Therefore, we agree with the respondent that it was error to admit the letters into evidence.

■ We now must determine whether there was sufficient remaining evidence to support the finding the medical expenses were extraordinary in nature.

Although prevented from testifying as to a diagnosis of Andrew's condition, the petitioner testified at length as to the manifestations of Andrew's emotional problems, the various doctors and counselors who had been treating him, and the remedial educational program in which he had been placed. In addition, the petitioner also testified as to the medical expenses incurred when Jamie suffered an ankle injury. Respondent did not call any witnesses to dispute the nature of these expenses. Nor did his cross-examination of the petitioner establish any serious dispute as to the nature of the expenses.

We conclude, therefore, that even without the letters in evidence, the petitioner established that the medical expenses were extraordinary in nature and therefore the obligation of the respondent to pay.

The respondent has not disputed, before this court, the remaining portions of the trial court's award, and, therefore, they are not before us for consideration.

The judgment of the circuit court of Lake County granting the increase in child support is reversed. The remaining portions of the judgment are affirmed.

Affirmed in part and reversed in part.

HOPF and DUNN, JJ., concur.