*In re* MARRIAGE OF JANE E. JONES, Plaintiff-Appellee, and JERRY L. JONES, Defendant-Appellant.

Third District   No. 3—86—0730

Opinion filed September 23, 1987.

594

Chris D. Rouskey, of Rouskey & Surinak, of Joliet, for appellant.

John F. Wols, of Stefanich, McGarry, Wols & Okrei, of Joliet, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

This appeal is from an order of the circuit court of Will County

denying a petition of Jerry Jones (father) in which he sought to obtain permanent custody of his twin sons and to remove them from Will County, Illinois, to Florida, thereby modifying the joint custody agreement incorporated in the judgment of marriage dissolution. The judgment specifically provided:

> "4. Joint physical custody shall be conditioned on each party residing in the Joliet area; if either party moves out of the Joliet area, either party may apply to the court for a determination of which party shall have custody of the minor children."

Jane Jones (mother) obtained the divorce from the father in 1983. They are the parents of twin sons born in 1971. After the divorce, the mother and father lived within six or seven blocks of one another. "Joint custody" has been carried out by actual sharing of physical custody of the boys; *i.e.*, they spend three or four days with their mother, then three or four with their father. Both parents attend sports events and school activities. The boys are close to both maternal and paternal grandparents, who also live in the Joliet area. Both twins are above-average students and have been in a college preparatory course at Catholic High School in Joliet. Both boys are very good athletes and have been all-star baseball players with local teams.

In early 1984 the father began to date Catherine Kinley, also divorced, whose youngest son was the best friend of the Jones twins. According to the father's testimony, the firm where he worked as an accountant for 15 years has undergone a change in ownership; he has been passed over for promotion several times recently; and his future prospects for continued employment with that firm are uncertain. Also, as he and Catherine began to consider marrying, they found her employment as a nurse from 10 p.m to 8 a.m. interferes with their opportunities to spend time together. As a result of these factors, the father and Catherine went to Florida in February, May, July and August of 1986 to look over the possibilities of moving there with their children.

The father filed the petition to modify the joint custody arrangement in August of 1986, and in September of 1986, he married Catherine Kinley. At the time of the hearing on his petition, in October of 1986, he and Catherine had bought a home in Coral Springs, Florida; Catherine had obtained employment there working a daytime schedule; and Catherine had moved there with her three children, ages 18, 15, and 14. The father was still residing in Joliet, but he had given notice of termination to his employer and was planning to go to Florida shortly to seek work there.

The mother owns a home in Joliet jointly with a woman friend

who resides with her. When the father asked the mother to agree to a modification of the custody order to allow the boys to live in Florida with him during the school year and to visit her during school vacations and for three months in the summer, she refused. The boys were interviewed by the court, and both expressed a desire to live with their father and his new family in Florida.

The trial court stated that a stable environment is equally as important as the desires of the boys in determining their best interest and noted that many of the advantages which the father had testified would be available in Florida were merely expectations and not certainties, as compared to the situation the boys would be leaving. The court said: "The Court sees young men, a family, friends; all the sports activities they could want; a fine school; and a stable environment as opposed to a new world which is totally untested."

On appeal, the father contends that the trial court erred in requiring clear and convincing evidence of a change in the circumstances of the children or the custodians which would require a modification of custody to serve the best interest of the children. He argues that the joint custody agreement was conditioned upon both custodians remaining in the Joliet area and the provisions for court determination in the event either parent moved out of the area should be construed as waiving the statutory burden of proof. Section 610(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 610(b)) provides as follows:

> "After the expiration of the 2 year period following a custody judgment ***, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment ***, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child."

It has been held that this section requires a more exacting burden of proof than did the prior statute, which employed only a preponderance of the evidence test. In *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 385, the court summarized the present standard as follows:

> "The law is well settled that clear and convincing evidence requires a high level of certainty. [Citation.] Clear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict

a person of a criminal offense."

The court went on to hold that the trial court's decision will not be disturbed on appeal unless it was contrary to the manifest weight of the evidence or amounted to an abuse of discretion.

■ The fact that this is a joint custody arrangement does not alter the burden of proof. The plain language of section 610(b) imposes a "clear and convincing" standard of proof on petitioners who would modify a joint custody arrangement as well as those who seek to change a single parent custody arrangement. (See *In re Marriage of Kartholl* (1986), 143 Ill. App. 3d 228, 495 N.E.2d 1006.) The provision in the original custody order which authorizes either parent to apply to the court for a determination of custody if either one moves out of the area merely incorporates the remedy provided for in the statute and is fully compatible with section 610(b). It would strain the imagination to find in that agreed-to provision an intent to waive the statutory burden of proof, as the father argues we should. We conclude that the trial court did not err in using a "clear and convincing" standard of proof in this case.

■ Next, the father contends that, even using a "clear and convincing" burden of proof, the decision of the trial court was contrary to the manifest weight of the evidence. He argues that his remarriage and his plans to move to Florida plainly represent a material change in his circumstances warranting a termination of the joint custody arrangement. He argues further that it would clearly be in the best interest of the boys to be a part of his new family with a father, mother, brothers and a sister, and also that the court gave insufficient weight to the desires of these mature children.

As to the preference of the boys, Illinois courts have consistently held that the preferences of the children are only appropriate when based on reasons related to their best welfare. (*E.g., Garland v. Garland* (1974), 19 Ill. App. 3d 951, 312 N.E.2d 811.) Here the trial court carefully weighed the boys' preference for moving to Florida with their father against the importance of maintaining stability in their lives, and the court gave consideration to the known advantages and disadvantages of the boys' lives in the Joliet area as opposed to the unknown factors that lay ahead in Florida.

■ It has been held that, where both parents have joint custody and have shared decision-making as to education and other matters, the request of one parent to remove the child from Illinois should be given particularly close judicial scrutiny. (*In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 496 N.E.2d 1149.) We believe that standard should be applied here where the parents have shared physical

custody and parenting time almost equally and where the father's removal request would alter the boys' environment in a material way.

■ Furthermore, the father has requested that the mother's custody rights under the joint custody agreement be terminated because he has chosen to move to Florida for the benefit of his relationship with his new wife and in the hope of finding better employment opportunities for himself. A similar situation was presented in *In re Custody of Anderson* (1986), 145 Ill. App. 3d 746, 496 N.E.2d 345, where the parents of two boys had agreed to a joint custody arrangement at the time of their divorce. The boys resided with the mother during the school year, but the father talked to them by telephone every day, had residency of the children every other weekend and holiday and during the summer months, and took an active role in the schooling of the boys. The mother was unable to obtain suitable daytime employment as a nurse in Crystal Lake, where she resided, and so she sought permission to remove the boys to Phoenix, Arizona, where she had found half-time employment at a hospital and a second job with a nurse-employment agency which supplies nurses to hospitals as needed. The trial court denied her request, and the reviewing court affirmed. The court held:

> "In light of the uncertainty of petitioner's Arizona employment, the fact that petitioner might well be able to find similar employment in the Chicagoland area, and the fact that removal would severely intrude upon respondent's joint custody rights, we cannot say that the trial court's denial of petitioner's motion to remove was against the manifest weight of the evidence." 145 Ill. App. 3d 746, 752, 496 N.E.2d 345.

Although the *Anderson* case involved a motion for removal, not custody modification, the impact upon the custody rights of the mother and the lives of the children is the same, and the factors to be weighed in determining the best interest of the children are very similar. We consider that the decision of the trial court here denying the father's request for modification of custody and removal to Florida was not contrary to the manifest weight of the evidence.

Accordingly, we affirm the judgment of the circuit court of Will County.

Affirmed.

STOUDER and SCOTT, JJ., concur.