In re MARRIAGE OF JANICE KUTINAC, Petitioner-Appellee, and THOMAS KUTINAC, Respondent-Appellant.

Second District   No. 2—88—0955

Opinion filed May 5, 1989.

378

Robert J. Long and Marcia A. Korducki, both of Law Offices of Robert J. Long, Ltd., of Antioch, for appellant.

No brief filed for appellee.

JUSTICE DUNN delivered the opinion of the court:

Thomas Kutinac appeals from an order of the circuit court of Lake County granting the petition of his former wife, Janice, to remove their two minor children, Christopher and April, to Florida. On appeal, Thomas raises the following issues: (1) that Janice failed to set forth a *prima facie* case that removal was in the best interests of the children; (2) that the trial court's decision to grant the petition for removal was against the manifest weight of the evidence; and (3) that the trial court erred by refusing to strike two letters attached to a conciliation services report. We reverse.

Janice has not filed a brief with this court. The record is brief, however, and the issues raised can easily be decided without the aid of the appellee's brief. We shall therefore fully review the merits of this appeal. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.) Furthermore, the interests of justice would dictate such a course since the interests of the children are at stake.

The circuit court entered a judgment dissolving the marriage of the parties on December 19, 1980. Under the terms of a marital settlement agreement incorporated into the judgment, Janice received sole custody of the children. On August 11, 1987, the trial court entered an agreed order modifying some of the terms of the judgment of dissolution. The agreed order stated that Janice and Thomas would have joint custody of the children, with Janice having physical custody. On August 31, 1987, Janice filed a petition for leave to remove the children to Florida. The parties attempted to resolve the matter through mediation but their efforts failed. The trial court held a hearing on the petition on August 31, 1988. At the time, April was 9 years old and Christopher was 10.

Ellen Wcislo testified that she was a program supervisor for the Lake County special education district. According to Wcislo, Christopher was in the special education program because of a learning disability and had been enrolled in the program since he was six or seven. Parents of children in the program were expected to come in for at least three meetings per year in order to review the progress of their child. Janice came in for more than three meetings per year while Thomas had only attended one meeting.

Dorothy Doerle testified that she was a friend of Janice and that Janice had epilepsy. According to Doerle, Janice did not own a car and did not have a driver's license. Janice traveled by bicycle or bus

and did not go out during winter if it was too cold.

Janice testified that she resided with her children in Grayslake. Between 1982 and 1987, Thomas, who resided in Ingleside, exercised his visitation rights about once every five weeks. After the joint custody order was entered, he only exercised his visitation rights once every 2½ months. Thomas would also see the children briefly when he went to Janice's home to drop off child support or insurance payments. According to Janice, Thomas seldom went with the children to activities such as soccer or religious education classes.

Janice wanted to move with the children to Clearwater, Florida. One of the reasons was that it would be easier to get around because of the climate. Her Illinois driver's license had been taken away because she had been involved in three accidents. Janice did not wish to attempt to get a new license until she was positive her epileptic seizures were under control. Janice stated that she and the children did much of their traveling by bicycle, but it was very difficult to ride a bicycle during the winter months. She also traveled by bus sometimes, but had to travel over a mile to catch the bus. During winter, she had to get rides to the store from her sister and neighbors. If her children could travel to activities on their bicycles, they would do so, and Janice would often go with them. Otherwise, she would have to arrange rides for the children from neighbors or her sister. It would be easier to live in a warmer climate, according to Janice, because she could still ride her bicycle in the winter months. Janice also had been told by a Clearwater Chamber of Commerce representative that the town had excellent bus service.

Another reason for the move was to relieve stress. Janice had noticed that she tended to suffer seizures more often when she was aggravated or suffering from stress. She felt that moving to Florida would greatly resolve her transportation problems, causing her to suffer less stress. She stated that she was taking medication and had not had any seizures for the past 14 months.

Janice also testified that both of her children were hearing-impaired, with Christopher suffering a more serious impairment. She stated that Christopher frequently had ear infections, especially during the winter. Janice testified that he tended to suffer the infections when he went out in cold weather without having his ears covered. During the past winter, Christopher had suffered about two ear infections per month lasting approximately two to seven days apiece. Christopher's ear problems were more serious in the winter than in the summer. He had an operation in May 1987 to have tubes inserted into his ears.

Janice stated that if she were permitted to move to Florida, she would do nothing to hinder Thomas' visitation rights. She admitted on cross-examination that she had not investigated the availability of public transportation in nearby Illinois cities and counties. She also stated that she knew only three people in Clearwater, a friend named Bonnie Grossos and Grossos' parents.

Thomas loved the children, according to Janice, but she did not understand why he was not willing to attend more activities with them. She stated that on some occasions when the children called Thomas to ask if they could spend the night with him, he told them he had more important things to do. Thomas did give the children presents on their birthdays and holidays. Janice testified that the children were generally excited about the proposed move, although Christopher did cry about it once after returning from his father's home.

The trial court denied Thomas' motion for a directed finding after Janice rested her case. Thomas testified that he saw the children almost every weekend during the past year. He also saw them often during the week. Thomas tried to help Janice and the children with transportation, although he could not always do so when he was assigned to work evening shifts. Thomas felt that he had a close relationship with the children. He stated that the children told him they did not wish to move because they would miss him and their friends in Grayslake.

Thomas testified that he had lived with Janice off and on for the past eight years. He stated that he lived with her and the children from November 1987 until February 1988 and lived with her off and on from October 1986 until March 1987. Thomas stated that he saw Janice have a seizure in late 1987 or early 1988. He also testified that he was on the phone with April about two weeks before the hearing and April told him that Janice was having a seizure. Janice testified on rebuttal that Thomas had not lived with her at any time during the past four years.

Irene Lee of Therapeutic Services for Human Development submitted a report to the court dated July 6, 1988, describing her efforts to mediate this matter. She also submitted an addendum to the report dated August 22, 1988. Neither Thomas nor Janice objected at the hearing to the consideration of the report or addendum by the trial court. At the end of the hearing, Thomas' attorney did move, however, to have copies of two letters attached to the addendum stricken as hearsay.

The first letter was from Dr. Shaku Chhabria, Janice's neurolo-

gist. The letter stated that, in view of the fact that her seizures were under control, the proposed move would not interfere with her ability to take care of her children or home. The second letter was from Dr. Alan Freint, an audiologist who treated Christopher and April. Dr. Freint's letter stated that it would benefit both children greatly if they resided in a warmer climate since it would lessen the frequency of middle ear infections.

The trial judge stated that he would not strike the two letters since the report made reference to them. Referring to the attachments, the trial judge then stated, "whether I consider them as fact is another question, and I will only consider it as fact that which is presented to me from the witness stand."

On September 2, 1988, the trial court issued an order granting the petition for removal. Under the order, the children would spend most of the summer with Thomas and one major holiday per year with him. Janice and Thomas were each required to pay half the necessary travel expenses.

■■ ■ Thomas contends that the trial court's decision to grant the petition was against the manifest weight of the evidence. The party seeking removal has the burden of proving that removal is in the best interests of the children. (Ill. Rev. Stat. 1987, ch. 40, par. 609.) The mere desire of the custodial parent to move to another State is not sufficient to establish that the move is in the child's best interests. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 325, 518 N.E.2d 1041, 1044.) Factors which should be considered by the trial court include the following: (1) the likelihood the proposed move will enhance the general quality of life for the children and the parent having physical custody; (2) the motives of the parent having physical custody in seeking to move; (3) the motives of the other parent in resisting removal; (4) the visitation rights of the parent without physical custody; and (5) whether a reasonable and realistic visitation schedule is possible if the move is approved. *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.

■■ Additionally, our supreme court emphasized in *Eckert* that it is "in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members." (119 Ill. 2d at 327, 518 N.E.2d at 1045.) The court stated that the examination of a removal petition should be guided by the policy of the Illinois Marriage and Dissolution of Marriage Act in custody matters, which is to ensure the maximum involvement and cooperation of both parents in matters involving the physical, mental, moral, and emotional well-being of the children. 119 Ill. 2d at 328, 518 N.E.2d at 1046.

■ In *Eckert,* our supreme court rejected the holding of the appellate majority that a *prima facie* showing for removal is made when the custodial parent states a desire to move, establishes a sensible reason for the move, and makes a superficial showing that the move is consistent with the child's best interests, stating that this standard improperly dilutes the burden of proof which the legislature has placed on the custodial parent seeking removal. (119 Ill. 2d at 326, 518 N.E.2d at 1045.) The petitioner in *Eckert* sought permission to remove a child to Yuma, Arizona, because a child from a previous marriage had asthma and because she had received an offer to teach in an accredited nursing program in Yuma. Petitioner's teaching position with a nursing program in Belleville paid her a comparable salary, but the program was not accredited.

In holding that the circuit court correctly rejected the petition for removal, our supreme court noted that no evidence was presented on how the proposed move would affect the condition of the son suffering from asthma (119 Ill. 2d at 329, 518 N.E.2d at 1046) and that the evidence cast doubt on petitioner's contention that the move was motivated in part by a desire to enhance her career (119 Ill. 2d at 328-29, 518 N.E.2d at 1046). In this context, our supreme court emphasized petitioner's admission in her testimony that she was not looking for a new job at the time she received the Yuma offer and her failure to seek employment at an accredited program in the St. Louis area, stating that it was difficult to understand why it would be worthwhile to move from Belleville to Arizona to accept such a position but would not be worthwhile to move a much shorter distance from Belleville to the St. Louis area in order to do the same. 119 Ill. 2d at 329, 518 N.E.2d at 1046.

■ At the hearing on the petition for removal, Janice mentioned the following reasons in support of the move: (1) the availability of better public transportation in Florida; (2) potential health benefits to her as a result of reduced stress; and (3) potential health benefits to Christopher. With regard to the first reason, Janice admitted that she never checked available public transportation in nearby Illinois towns and counties. This casts considerable doubt upon her contention that the transportation needs of the family were a primary motivating factor for the move. The only evidence that the move would benefit Janice's health is her testimony that the move would alleviate her transportation problems, causing a reduction in stress which would benefit her epileptic condition. This testimony is entirely speculative and was not supported by any other evidence, including expert medical testimony. It would appear equally reasonable to presume that the

stress resulting from moving her two children a long distance to an unfamiliar area could produce stress that would exacerbate her epileptic condition.

Janice also argued in the trial court that the proposed move would benefit Christopher's health. She testified that Christopher suffered ear infections more frequently in the winter than the summer. Dr. Freint's letter, which was attached to the conciliation report, stated that the proposed move would greatly benefit the health of both children by reducing the frequency of middle ear infections. Thomas objected to any consideration of this letter by the trial court on the basis that it constituted hearsay evidence.

A letter is hearsay as to its contents and is not admissible unless it falls within one of the exceptions to the hearsay rule. (*In re Marriage of Morrisroe* (1987), 155 Ill. App. 3d 765, 772-73, 508 N.E.2d 464, 470.) Since Janice cited no such exceptions to the trial court and it appears none is applicable, we agree that the letter constituted inadmissible hearsay.

In *Morrisroe*, the petitioner sought a modification of child support. The trial court permitted petitioner to introduce several letters from doctors into evidence over respondent's hearsay objection. The basis for the trial court's ruling was that the court had great leeway because the welfare of a child was at stake. (*Morrisroe*, 155 Ill. App. 3d at 772, 508 N.E.2d at 470.) This court subsequently reversed the trial court's ruling, determining that the letters constituted inadmissible hearsay. 155 Ill. App. 3d at 773, 508 N.E.2d at 470.

The rule against hearsay is a fundamental rule of evidence, not a technical one. (*Eastman v. Department of Public Aid* (1989), 178 Ill. App. 3d 993, 996, 534 N.E.2d 458, 460.) The rule exists primarily because of the importance and necessity of cross-examination. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 199, 367 N.E.2d 1238, 1240.) In cases such as the one at bar in which the interests of children are at stake, it is vital for the trial judge to have as complete a picture of the facts as possible in order to determine what course is in the best interests of the children. Relaxation of the rule against hearsay is therefore not appropriate in proceedings involving the interests of children.

In *Eckert*, as we have noted, the petitioner failed to present any evidence concerning the effect of the proposed move on the condition of the son suffering from asthma. (*Eckert*, 119 Ill. 2d at 329, 518 N.E.2d at 1046.) The only evidence presented by Janice concerning the effect of the proposed move on Christopher's ear condition was Dr. Freint's letter, which was inadmissible. While Janice stated sensi-

ble reasons for moving to Florida, she failed to introduce any evidence that the move would be in the best interests of the children. Under the *Eckert* holding, Janice failed to meet her burden of proof with regard to the petition for removal. The trial court abused its discretion in granting the petition.

Accordingly, the judgment of the circuit court of Lake County is reversed.

Reversed.

UNVERZAGT, P.J., and McLAREN, J., concur.