*In re* MARRIAGE OF GREGORY P. FIRKUS, Respondent-Appellee, and TRUDY FIRKUS, n/k/a Trudy Guerra, Petitioner-Appellant.

Fifth District   No. 5—91—0147

Opinion filed December 30, 1991.

WELCH, J., dissenting.

Elizabeth Levine Levy, of Levy & Levy, P.C., of Collinsville, for appellant.

James M. Drazen, of Troy, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Trudy Firkus, now Guerra, had been awarded custody of an only child in an earlier dissolution order and in this proceeding requested the circuit court's permission to take the child to Florida. The circuit court directed a judgment against her at the close of her case in chief,

ruling that there was insufficient proof that the move was in the child's best interests. We affirm.

Section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 609) permits a custodial parent to remove a child from the State whenever removal is in the best interests of the child and places the burden of proof "on the party seeking the removal." Ill. Rev. Stat. 1989, ch. 40, par. 609.

■■ The Illinois Supreme Court in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041, said no bright-line test for determining the best interests of a child exists; rather, removal depends upon the facts and circumstances of each case. (*Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.) To aid the circuit court's determination whether removal is in the child's best interest, the court suggested consideration of the following factors: (1) the likelihood that the move will enhance the quality of life and general welfare of both the custodial parent and the child; (2) the custodial parent's motive in seeking removal; (3) the motives of the noncustodial parent in resisting removal; (4) whether a realistic and reasonable visitation schedule can be reached if removal is allowed; and (5) if the move is to a distant jurisdiction, the harm to the child which may result. *Eckert*, 119 Ill. 2d at 326-28, 518 N.E.2d at 1045-46.

In this appeal, Guerra claims the circuit court erred by directing a judgment against her because she had made a *prima facie* case of removal inasmuch as she presented some evidence on every factor set out in *Eckert*. We hold that presenting some evidence on every factor set out in *Eckert* is not necessarily equivalent to making a *prima facie* case for removal.

■■ The *Eckert* factors are not *elements* of a *prima facie* case that must be proven in order to avoid a directed judgment. Rather, they are merely *suggestions*, factors to be considered when determining whether removal serves the child's best interests. Presenting some evidence on each *Eckert* factor, therefore, will not necessarily make a *prima facie* case for removal. A *prima facie* case for removal of a child from the State is made by proving that the move is in the child's best interests.

Here, the circuit court ruled at the close of Guerra's case that there had been an insufficient showing that the move was in the child's best interests, and we cannot say that ruling was against the manifest weight of the evidence or that a manifest injustice has occurred. (See *Eckert*, 119 Ill. 2d at 330, 518 N.E.2d at 1046 (for this court's standard of review).) Thus, we cannot reverse.

The circuit court is affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE WELCH, dissenting:

Without discussing any of the facts of this case, the majority concludes that the trial court's finding that the petitioner, the custodial parent, failed to prove that removal of the child to Florida was in the child's best interest was not against the manifest weight of the evidence. I cannot agree.

I do agree with the majority that when, as in the instant case, a motion is made for judgment in respondent's favor at the close of petitioner's case, that motion will be granted unless petitioner has met her burden of proof on every element essential to her case. (*In re Custody of Anderson* (1986), 145 Ill. App. 3d 746, 750, 496 N.E.2d 345, 348.) This decision can be made only after considering the weight and quality of all the evidence, including that favorable to the respondent. (*Anderson*, 145 Ill. App. 3d at 750, 496 N.E.2d at 348.) Thus, I agree with the majority that, in order to survive a motion for judgment at the close of petitioner's case, petitioner must do more than simply present *some* evidence that the removal of the child *is* in the child's best interest; the petitioner must prove that, in fact, the removal is in the child's best interest. However, I disagree with the majority's finding that the petitioner failed to carry this burden in the instant case.

As the majority points out, our supreme court has set forth certain factors which courts are to consider in deciding whether removal is in the child's best interest. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.) There is no simple bright-line test for reaching this decision, and each case must be decided on its own facts. (*Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.) However, *Eckert* tells us that courts should consider: (1) the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children; (2) the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation; (3) the motives of the noncustodial parent in resisting the move; (4) the visitation rights of the noncustodial parent, remembering that it is in the best interest of a child to have a healthy and close relationship with both parents, as well as other family members; (5) whether a realistic

and reasonable visitation schedule, *i.e.*, one that will preserve and foster the child's relationship with the noncustodial parent, can be reached if the move is allowed; and (6) when removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the child, the potential harm to the child which may result from the move. *Eckert*, 119 Ill. 2d at 326-28, 518 N.E.2d at 1045-46.

In *Eckert*, the supreme court found that petitioner's claim that the move from Illinois to Arizona was motivated by a desire to enhance her career was put in question by the fact that her new position in Arizona paid little, if any, more than she was earning in Illinois and she admitted that she really had not been looking for work. The court found that petitioner's claim that she could not find comparable work in Illinois was also questionable because petitioner admitted that she had not looked for comparable work near her home in Illinois. Petitioner's claim that the move to Arizona would benefit the health of one of her children was unsubstantiated by the evidence. Finally, the court found that the respondent/father was an exemplary parent who had an exceptionally good relationship with the child. The court found that petitioner had at times attempted to interfere with respondent's visitation with the child. Furthermore, most of the child's extended family lived in Illinois. The supreme court affirmed the judgment of the circuit court that removal of the child was not in the child's best interest.

It appeared in *Eckert* that the only reason for the move to Arizona was the petitioner's mere desire to move to another State. This is not sufficient to establish that the move is in the child's best interest. *In re Marriage of Kutinac* (1989), 182 Ill. App. 3d 377, 382, 538 N.E.2d 862, 865.

The instant case is more similar to *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780. In that case, the custodial mother had married a man, Martin, who was employed by the United States Postal Service. Prior to his engagement to the custodial mother, Martin had requested a transfer within the postal service from Chicago to Seattle, Washington. Subsequent to the marriage, this request was approved and Martin was transferred to Seattle. He could not refuse the transfer without also losing his job with the postal service in Chicago. He would lose many benefits if he ceased working for the postal service. Furthermore, Martin wanted very much to move his family to Seattle.

The custodial mother had located a school in Seattle comparable to that attended by the child in Chicago. She had also found a suitable synagogue and a suitable pediatrician. Mother thought the prospects

for her finding comparable employment in Seattle were good. Mother also agreed to allow the noncustodial father liberal visitation with the child, including weekly telephone calls at mother's expense. Travel would be paid for in part by father's child support payments, which mother agreed to put in an escrow fund to be allocated entirely to transportation.

Father testified to the liberal visitation he exercised with the child in Chicago. He testified that he saw the child often and was very involved in the child's life.

In applying the factors set forth in *Eckert*, the appellate court found that the quality of life for the child would not be directly enhanced by the move to Seattle. Instead, the quality of her life would remain basically the same. However, the move to Seattle would greatly enhance the quality of life for the custodial mother and, therefore, indirectly, the quality of life for the child. The court pointed out that the child is part of a household which consists of her, her mother and her mother's new husband. The quality of life for the entire household would be enhanced by the move to Seattle because they would all be together where they wanted to be. Finally, the court found that, although the noncustodial father's visitation rights would change against his wishes, the liberal visitation rights proposed by mother would provide father with an adequate means to foster his relationship with the child. The court stated, "On balance, we do not think that the interests of the custodial mother should be subordinated to those of the custodial father. *** Although [father] would prefer consistent day-to-day contact with [the child], this preference is insufficient to chain [mother] to the State of Illinois." 175 Ill. App. 3d at 190, 529 N.E.2d at 783.

In the instant case, the record indicates that mother sought to move to Florida to be with her new husband, who, being unable to find employment in his field near their home in Illinois, had sought and found employment in Florida. Petitioner's husband's move to Florida was motivated by his ability to find work there and also by his desire to live there. He sought work in Miami because he had a friend working in the same field there who told him there were many jobs available. He was able to find a job in Florida within 15 days. He had searched for a job in his field in the Illinois area for six months to one year. Husband works a full-time job and a part-time job in Florida. Mother and her husband also have a child together, who remains with her mother in Illinois.

Because of the financial strain of maintaining two households, mother and her two children have moved in with her parents. She and

her two children live in the basement of her parent's home. The child in question does not have his own room. Mother works part time at a Subway Sandwich Shop, earning between minimum wage and $5 per hour, depending on the hours she works. Although mother has a bachelor's degree and is certified to teach in Illinois, she has not sought employment in the teaching field in Illinois. She has, however, applied for a teaching job in Florida. However, she feels that her husband earns enough that she might be able to stay home with the children. She thinks this would be beneficial to the children.

Mother's husband has rented a two-bedroom apartment in an upper middle-class suburb of Miami. The apartment complex has a pool, gymnasium facilities and grassy areas for children to play. Mother feels it is a low-crime area. Mother has made no real investigation into the school system in Florida. Mother feels the separation from her husband creates great stress for everyone, including the child.

The child's father has always exercised his visitation rights and has a good relationship with the child. He visits with the child every other weekend, as well as three weeks in the summer and every other holiday. Furthermore, the child's extended family resides in Illinois and the child has good relationships with this extended family. However, mother testified that her new husband is employed by a major commercial airline and therefore the child could receive passes to fly home for visitation. There might still be some cost involved. Mother suggested visitation once a month or every other month with an extended summer visitation. Mother stressed that she did not want to hamper father's visitation with the child. She admitted that the child's visitation with her parents might be reduced to once every four or five months.

Applying the *Eckert* factors to the case at bar, I think the trial court's finding that petitioner failed to prove that removal to the State of Florida is in the child's best interest is against the manifest weight of the evidence. Initially, there is no suggestion in the record that the motive of either of the parents in seeking or resisting removal is improper. The evidence indicates that the move to Florida would enhance the quality of life for the child, not only indirectly in that his family would be together and his mother happy, but also directly in that he would be living in his own home with his own family rather than in the basement of his grandparents' home. He would have his own room in a two-bedroom apartment. At present, he does not have his own room. The apartment is in an upper middle-class area, and the apartment complex has recreational facilities. The financial situation of the family would be much improved. While the record

contains little evidence as to the quality of the school system in Florida, failure to adduce evidence on this one fact does not destroy petitioner's case.

With respect to visitation, the evidence shows that petitioner would receive passes to fly the child home for visitation at little or no cost. Petitioner feels that visits monthly or every other month as well as an extended summer visitation and holidays would be sufficient for father to foster his relationship with the child, and I agree. Although the child's extended family resides in Illinois, he could visit with them when he visits his father.

As in *Zamarripa-Gesundheit*, I do not think the interests of the custodial mother should be subordinated to those of the noncustodial father. Mother should not be put in the position of choosing between her new husband who, despite diligent efforts to find employment in Illinois, was forced to move to Florida to find employment and her son, especially where, as here, transportation for visitation is easily arranged. Although, of course, father does not want his son to move away, his desire is not sufficient to chain mother to the State of Illinois.

I would have reversed the judgment of the circuit court as against the manifest weight of the evidence.