*In re* MARRIAGE OF BARBARA STADHEIM, Petitioner-Appellee, and ROLF STADHEIM, Respondent-Appellant.

First District (3rd Division)   Nos. 85—1105, 85—1612 cons.

Opinion filed May 11, 1988.

Rolf O. Stadheim, of Chicago, appellant *pro se.*

Kirsh & Berman, Ltd., and Sherwood M. Zwirn, Ltd., both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Respondent, Rolf Stadheim, appeals from certain orders of the trial court entered as a result of petitioner's, Barbara Stadheim's, petition to amend the parties' divorce decree. On appeal, Rolf assigns as

error the trial court's: (1) *sua sponte* nullification of the unallocated maintenance and child support provision of the parties' settlement agreement; (2) order increasing child support payments; and (3) assessment of Barbara's attorney fees against him. We affirm in part and reverse in part.

Barbara and Rolf Stadheim were married in December 1964 and divorced in October 1979. At the time Barbara and Rolf were divorced, their four daughters were ages 13, 11, 9 and 6. Pursuant to the terms of the parties' settlement agreement, Barbara and the children would remain in the marital home until the youngest daughter reached the age of 18. The house would then be sold and the proceeds divided equally. In addition to various other initial and continuing expenses, the agreement further required Rolf to provide Barbara and the children with unallocated maintenance and child support (family support) in the amount of $28,000 per year, with yearly increases of 5%. Moreover, as each child reached the age of majority, the family support payments would decrease by 20%.

In November 1983, Barbara filed a petition for an increase in the amount of family support and for an order requiring Rolf to pay for the college education of the parties' eldest child. A hearing was held regarding Barbara's petition on January 3, 1985. At the hearing, it was established that Rolf was paying for the parties' eldest daughter's tuition. The parties also testified concerning Barbara's contention that she and the children were entitled to an increase in family support.

Thereafter, the trial court entered an order requiring Rolf to continue paying for the college expenses of his oldest daughter, including "reasonable round-trip transportation expenses for holiday and semester breaks." With respect to Barbara's claim for increased family support, the court *sua sponte* vacated a portion of the parties' settlement agreement to eliminate both the 20% reduction in family support as each daughter reached majority and the corresponding 5% yearly increase. The trial court then ordered that the yearly amount of family support be increased from $33,120 to $42,000. The trial court also ordered Rolf to pay Barbara's attorney fees of $5,800.

Rolf initially assigns as error the trial court's *sua sponte* striking of that portion of the parties' settlement agreement relating to family support.

The provision of the agreement at issue here states in relevant part:

> "The husband shall pay to the Wife, unallocated maintenance for the Wife and support of the children of the parties (herein-

after called 'family support') the sum of $35,000 for the first year following execution of this agreement and $28,000 per year for each subsequent year payable in 24 equal installments on the 1st and 15th of each month. In addition, the aforesaid yearly payment shall be increased by $1,440 on the anniversary date of this agreement each year to compensate for the effects of inflation and the increased needs of the children as they mature.

Upon the death, attainment of age 18, or other emancipation of each child, the family support shall be reduced by 20% of the amount stated for the second and subsequent years and automatic yearly increments to date."

Following testimony by the parties and argument of counsel, the trial court entered an order in which it concluded that: (1) the built-in modification of 20% as the children go to college is not a workable solution; (2) future modifications in the amount of support should not be based upon automatic increases or decreases, but should take into account such matters as the financial ability of defendant and the need of plaintiff to seek more gainful employment; and (3) the family support shall be $42,000 per year as of August 1, 1984, an increase of approximately $9,000 from the existing support obligation. In its order, the court also vacated that portion of the settlement agreement requiring an automatic increase of $1,140 per year in family support and the corresponding provision requiring a 20% reduction as each child reaches the age of 18.

Initially, while the trial court ordered an increase in family support, the modifications effectuated by the court to achieve such a result involved a change in both maintenance and child support. As such, the court was required to analyze two distinct standards prior to reaching its decision on Barbara's request for an increase in family support. For the sake of both organization and clarity, we shall first address that portion of the court's order as it relates to maintenance for Barbara.

■ Following negotiations, and with the representation of counsel, Barbara and Rolf entered into a marital settlement agreement. This agreement was incorporated as part of the judgment dissolving Barbara and Rolf's marriage pursuant to section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 502). Section 502 is generally intended to encourage the parties to reach an amicable settlement of their personal and financial affairs. Once the provisions of a marital settlement agreement are incorporated into the judgment, the agreement is merged in the judg-

ment. The terms of the agreement then have the same affect against the parties as a court determination. (*In re Marriage of Morris* (1986), 147 Ill. App. 3d 380, 389, 497 N.E.2d 1173, 1178.) Therefore, the terms of a settlement agreement, except as they pertain to children, are binding upon the court and will be set aside only if the court is shown that the agreement is unconscionable (Ill. Rev. Stat. 1985, ch. 40, par. 502(b)), or procured through fraud, coercion or duress. See *In re Marriage of Morris,* 147 Ill. App. 3d at 389, 497 N.E.2d at 1178.

■ An agreement is unconscionable if it is "improvident, totally one-sided or oppressive." (*In re Marriage of Morris,* 147 Ill. App. 3d 380, 390, 497 N.E.2d 1173, 1178; *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 317, 474 N.E.2d 28, 33.) In order to be fraudulent, a misrepresentation must consist of: (1) a false statement of material fact, (2) known by the party making the statement to be false, (3) made for the purpose of inducing the other party to act, and (4) in fact relied upon by the other party. Fraud must be established by clear and convincing evidence. (*In re Marriage of Morris,* 147 Ill. App. 3d at 393, 497 N.E.2d at 1178.) Duress and coercion have been defined as including the imposition, oppression, undue influence or the taking advantage of the stress of another whereby the individual is deprived of the exercise of his free will. Duress and coercion must likewise be proved by clear and convincing evidence. Absent such a finding, the settlement is binding upon the trial court. (*In re Marriage of Chapman* (1987), 162 Ill. App. 3d 308, 316-17, 515 N.E.2d 424, 431.) As a result, when a party seeks to vacate or modify a property settlement agreement incorporated into a dissolution decree, all presumptions are in favor of the validity of the agreement. A trial court's finding will be upheld unless it is against the manifest weight of the evidence. *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 317, 474 N.E.2d 28, 30.

■ Here, the trial court made no finding of unconscionability with respect to the provisions of the settlement agreement at issue. Nor did the trial court determine that the pertinent provisions of the settlement agreement were the result of fraud, coercion or duress. Rather, the court vacated the provision concerning family support because it was "unworkable." Such a finding is insufficient to vacate a provision of a settlement agreement under section 502(b) (Ill. Rev. Stat. 1985, ch. 40, par. 502(b)). See *In re Marriage of Riedy,* 130 Ill. App. 3d 311, 317, 474 N.E.2d 28, 30.

Moreover, we have reviewed the terms of the settlement agreement as they relate to maintenance and find no evidence of uncon-

scionability. As the agreement on its face evinces no sign of unconscionability, it was binding upon the court absent any evidence of fraud, coercion or duress. Neither the pleadings filed in this case, nor the proceedings conducted before the trial court concerning this issue, even intimate that the settlement agreement was the result of fraud, coercion or duress. We therefore believe that the trial court erred when it *sua sponte* vacated the family support provision of the parties' settlement agreement and increased Barbara's award of maintenance.

■ We now turn to the issue of child support. Modification of child support is governed by section 510(a) of the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) Once a petition for modification of child support has been presented, the court's "paramount consideration" must be whether a substantial material change in circumstances *has occurred since the entry of the decree* which would allow the court to alter the existing award of child support. (Emphasis added.) (*In re Marriage of Morrisroe* (1987), 155 Ill. App. 3d 765, 770, 508 N.E.2d 464, 468.) If the threshold question of substantial change is met, the court, in determining the modification, considers the same factors it considered in formulating the original amount of child support. The modification of such support lies within the sound discretion of the trial court. Absent an abuse of this discretion, the trial court's decision will not be disturbed on appeal. *In re Marriage of Wettstein* (1987), 160 Ill. App. 3d 554, 561, 514 N.E.2d 783, 787.

■ Here, the trial court found that a substantial change of circumstances had occurred since the 1979 divorce decree. Rolf, however, contends that the evidence was insufficient to support an increase in child support. Rolf concludes that the trial court erred in striking that portion of the family support provision requiring an automatic increase of $1,140 per year and a 20% reduction as each child reaches age 18. We agree.

Initially, the parties' settlement agreement provides that the family support payment will be increased by $1,440 each year to compensate for the effects of inflation and the increased needs of the children as they mature. The record reflects the parties freely negotiated that each should share their obligations and responsibilities in the manner specified by the terms of the settlement agreement. Clearly, subsequent displeasure with the facts as they existed at the time of the agreement, and the actions taken to rectify these facts in the future, neither constitutes a change in circumstances nor justifies an increase in child support payments. We believe that Barbara was required to show a substantial material change in circumstances beyond

those both contemplated and ultimately provided for by the parties in their settlement agreement. We do not believe that Barbara has met her burden in this respect.

To the contrary, the only semi-articulate arguments advanced by Barbara were that the cost of living has increased and that the children have grown older. These occurrences, however, were previously contemplated by the parties and subsequently provided for in the settlement agreement. Moreover, our examination of the record reveals that the remaining "evidence" presented by Barbara on this issue consisted mainly of incomplete, uninformative "guesstimates" from which it is virtually impossible to extrapolate any information of probative value. In our opinion, the record supports the conclusion that the findings of the trial court on this issue were against the manifest weight of the evidence.

■ We lastly address Rolf's argument that the trial court abused its discretion when it ordered him to pay $5,800 for the attorney fees Barbara incurred as a result of her petition for modification. We disagree.

Ordinarily, the party for whom legal services were rendered is responsible for those fees. However, section 508(a)(1) of the Act provides that a court may order an ex-spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in connection with the maintenance or defense of any proceeding under the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(1).) A party seeking an award of attorney fees must show a financial inability to pay the fees and a corresponding ability of the ex-spouse to do so. Financial inability to pay does not require a showing of destitution. *In re Marriage of MacFarlane* (1987), 160 Ill. App. 3d 721, 729, 513 N.E.2d 1146, 1151.

■ Once an award of fees is deemed appropriate, the trial court is then required to determine the reasonableness of the request by considering the (1) skill and standing of the attorneys involved; (2) nature and complexity of the litigation; (3) time and labor required; (4) customary charge in the community; and (5) benefits the client derived from the representation. The allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court. Absent an abuse of the court's discretion, a fee award will not be reversed on appeal. *In re Marriage of MacFarlane*, 160 Ill. App. 3d at 729, 513 N.E.2d at 1151.

■ We first address the issue of the parties' financial ability to pay their respective fees. Here, by its order, the trial court determined that Barbara was financially unable to pay her fees while Rolf

had the ability to do so. We conclude that based on the financial information before the trial court, the court was well within its discretion in requiring Rolf to pay Barbara's attorney fees.

With respect to Rolf's assertion that Barbara's attorney fees were excessive, we have reviewed the fee petition and the testimony presented at the attorney fee hearing. After reviewing the fee petition and the hearing testimony, the court discussed the factors as set forth in section 508 of the Act, specifically noting that the court was familiar with the parties' original divorce proceeding and the subsequent financial positions of the parties. The court then reduced the requested fee amount as it deemed appropriate. Considering all of the relevant factors before us, we cannot say that the trial court's fee award constituted an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

McNAMARA and FREEMAN, JJ., concur.