In re MARRIAGE OF KATHLEEN ANN VALTER, f/k/a Kathleen Ann Leroux, Petitioner-Appellee, and RAYMOND J. LEROUX, Respondent-Appellant.

Fifth District   No. 5—89—0275

Opinion filed November 21, 1989.

Endicott & Finch, of Carmi, for appellant.

James L. Van Winkle, of Van Winkle & Van Winkle, of McLeansboro, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Raymond J. Leroux, appeals the decision of the circuit court of White County granting petitioner, Kathleen Ann Valter, formerly Kathleen Ann Leroux, custody of their son, Scott Leroux. This court affirms.

Petitioner and respondent were married on May 20, 1971. Their only child, Scott, was born on September 2, 1975. On January 8, 1979, the Superior Court of California entered a judgment of dissolution of their marriage. The court-approved marriage settlement awarded petitioner custody of Scott. Four months later, the parties agreed to change custody from petitioner to respondent and entered the appropriate order of modification. At that time, petitioner had moved to Carmi, Illinois.

In August 1985, petitioner filed a petition seeking custody of Scott. Judge Henry Lewis held a hearing on December 19, 1985. At that time, respondent was stationed on the island of Crete with the United States Air Force. Respondent worked eight hours per day, for a total of 40 hours per week. Judge Lewis heard testimony that respondent did not work at night or on weekends and spent that time with his new wife, their two children, and Scott. At the hearing, respondent testified that he almost never arrived home later than 7 p.m. In addition, he testified that while he had a few drinks when

bowling, he was legally intoxicated "not very often." As a result of the 1985 hearing, Judge Lewis entered an order outlining the parties' stipulated agreement giving respondent custody of Scott and petitioner summer visitation rights.

In September 1986, respondent was reassigned by the Air Force to Aurora, Colorado. For approximately two months, during the move, Scott lived with respondent's parents in New York. Thereafter, Scott joined his father in Colorado. In April 1987, respondent was divorced from his third wife. He was awarded custody of his two children of that marriage. From April 1987, through June 1988, respondent employed a number of different baby-sitters and housekeepers.

In June 1988, Scott went to Carmi to visit petitioner, which he did each summer, as per the custody agreement. During Scott's visit, respondent met his fourth wife. Ten days after they met, she and her four children, ages 13, 10, 7 and 4, moved into respondent's home. On December 30, 1988, respondent married his fourth wife. Scott found out about the change when he telephoned home and was surprised that a strange person answered.

In July 1988, petitioner instituted this action. Judge Keenan held a hearing on the petition on March 14, 1989. Respondent testified that he now works approximately 60 hours per week. He testified that in addition to his work with the Air Force, he works for the Coca-Cola Company on weekends and an occasional evening. In addition to his jobs, respondent is active in church and charity work. Respondent testified that he does not have much time for his family or sleep.

Since the 1985 hearing, respondent has joined Alcoholics Anonymous and regularly attends their meetings. He currently counsels other military personnel who have alcohol problems.

Since moving from Crete, Scott's school work has slipped. Previously, his work was consistently near "A" level. In Colorado, however, he is performing at "C" level. A school guidance counselor has attributed Scott's academic slide to parental feuding.

Scott testified that he wishes to live with petitioner. He is afraid of respondent, indicating that respondent "takes his violence out on us kids."

Friends of Scott and friends of petitioner testified that Scott was quite happy during his summers in Carmi. As the end of each summer approached, however, Scott became physically ill, refused to eat, and began to cry. At one point, he suggested that he may run away.

The circuit court granted petitioner's request for a change in cus-

tody. The court found that a substantial change had occurred in the circumstances of respondent since the last hearing. As a result of those changes, Scott's circumstances have changed as well. The court believed that the child's interests would best be served by a change.

The circuit court cited several factors which, taken together, constitute a substantial change. The court listed (1) the move from Crete, (2) respondent's acknowledged alcohol dependency, and (3) the additional work and great demands on respondent's time. The factor which the court characterized as "the most significant change of all," however, was respondent's divorce from his third wife and remarriage in December 1988. This introduced a new stepmother and four additional children into Scott's household. In addition, the court noted the social and financial consequences of the additional family members as well as the substantial additional demands on respondent's time.

■ Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides, in pertinent part:

"(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, *** and that the modification is necessary to serve the best interest of the child. *** The court shall state in its decision specific findings of fact in support of its modification *** if either parent opposes the modification or termination." Ill. Rev. Stat. 1987, ch. 40, par. 610(b).

■ Custody determinations rest within the sound discretion of the circuit court. There is a legislative presumption in favor of the present custodian and a policy favoring the finality of child custody judgments. "Once the court concludes that a change in custody is necessary, great deference must be accorded that decision, since the trial court is in the best position to judge the credibility of the witnesses and determine the needs of the child." (*In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 498-99, 485 N.E.2d 367, 370-71, citing *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389-90; *In re Marriage of Richmond* (1988), 171 Ill. App. 3d 506, 507, 525 N.E.2d 1226, 1226-27.) This court must determine whether the trial court's decision is contrary to the manifest weight of the evidence. We will not review this case *de novo*, but will only inquire as to whether the trial court abused its discretion. *Sussenbach*, 108 Ill. 2d 489, 485 N.E.2d 367; *Richmond*,

171 Ill. App. 3d 506, 525 N.E.2d 1226.

■ ■ Respondent contends that the circuit court based its decision on "pure speculation and assumptions." The circuit court, however, met its statutory obligation of detailing specific findings of fact which support its decision. Because one parent opposes the modification, the court outlined very specific factual details which it believed establish clearly and convincingly that a change has occurred. The supreme court in *Sussenbach* held the circuit court's factual statement adequate even though it did not assess the intricate implications of each change. (*Sussenbach*, 108 Ill. 2d at 497-98, 485 N.E.2d at 370.) The factual statement in the instant case is much more explicit than the statement in *Sussenbach*. Neither case law nor the statute requires the circuit court to explain in exceptional detail the implications of each change on the child. Section 610(b) of the Act merely requires the court to state in its decision specific findings of fact which have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, demonstrating that a change has occurred in the circumstances of the child or his custodian. In addition, the court must find that the modification is necessary to serve the best interest of the child. Ill. Rev. Stat. 1987, ch. 40, par. 610(b); *Sussenbach*, 108 Ill. 2d 489, 485 N.E.2d 367; see also *In re Marriage of Oliver* (1987), 155 Ill. App. 3d 181, 507 N.E.2d 1298; *Vollmer v. Mattox* (1985), 137 Ill. App. 3d 1, 484 N.E.2d 311.

The move from Crete back to the United States is obviously a major change in the surroundings if not circumstances of the boy. There is no need to further explain the implications of that move.

Respondent's acknowledged alcohol dependency either arose subsequent to the 1985 hearing or was hidden from that court. In 1989, however, the dependency was proved by clear and convincing evidence. The circuit court could reasonably find that respondent's alcohol dependency and later counseling of alcoholics are a change in circumstances.

The additional work and great demands on respondent's time are substantial changes in Scott's surroundings as well. In 1985, respondent testified to working 40 hours per week and spending the vast remainder of his time with his family. Before the circuit court in 1989, however, respondent testified that he did not have much time for his family or sleep. In addition, there are four new children, each demanding attention from respondent. The circuit court could reasonably determine that this was a substantial change in Scott's surroundings and circumstances.

The circuit court was justified in its determination that Scott's home-life circumstances had substantially changed since 1985. In 1985, respondent testified that he had an "excellent" relationship with his third wife. Nevertheless, within a year, he was divorced. Following this divorce, respondent hired a series of baby-sitters and housekeepers to watch over Scott and his two half-brothers. Then, in June 1988, while Scott was in Carmi with petitioner, respondent met his fourth wife and moved her and her children into his home. Scott returned home to a greatly expanded immediate family. There was testimony that less than a familial relationship exists between Scott and his new stepmother and stepsisters. In addition, there was testimony of respondent's fourth wife making disparaging remarks about petitioner to Scott.

The loss of one stepmother, substitution of baby-sitters, and final introduction of a new stepmother and stepsisters can be a substantial change in the circumstances and surroundings of a child. The circuit court was justified in finding this as the most significant change of all. There was no abuse of discretion.

■ There is a legislative presumption in favor of the present custodian and a policy favoring the finality of the child custody judgments. (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385.) The purpose of this presumption is to promote stability and continuity of the child's custodial environmental relationships. As in *Shoff v. Shoff* (1989), 179 Ill. App. 3d 178, 186, 534 N.E.2d 462, 467, citing *Wechselberger*, that goal may best be served by modification of custody.

■ Respondent makes much of the fact that petitioner was seeing a married man. He also points out that petitioner works as a nurse and is "on twenty–four-hour call" on occasion. Although both are factors for the circuit court to consider, as stated above, this court will not conduct a *de novo* review. Once the court determined there was a change in Scott's surrounding circumstances, the trial court was in the best position to weigh all of the evidence and make a determination whether a modification was in Scott's best interests. We cannot say there has been an abuse of discretion.

■ Respondent also asserts that the trial court erred when it considered Scott's wishes to live with his mother. Respondent argues that the trial court should not have given any weight to Scott's preference. Illinois cases are clear in holding that a mature child's preference should receive considerable weight when based on sound reasoning. (*Shoff v. Shoff* (1989), 179 Ill. App. 3d 178, 185, 534 N.E.2d 462, 466.) If, however, there is no substantial change in the child's sur-

roundings, the circuit court may disregard those wishes. (*Garner v. Garner* (1977), 46 Ill. App. 3d 56, 60, 360 N.E.2d 373, 377.) The court, of course, should disregard those wishes if the child's choice is not in his best interest. *Shoff*, 179 Ill. App. 3d 178, 534 N.E.2d 462.

■■ The circuit court did not err or abuse its discretion when it heard Scott's testimony and assigned some weight to his wishes. The court noted that it was influenced by Scott's wishes, but only to a small degree as it noted substantial change in Scott's surroundings. At the time of the hearing, Scott was just shy of 14 years old. He articulated very specific reasons for his desire to live with petitioner. Among those reasons were the change in his surroundings with the substantial additions to his immediate family and his feeling of being "closed in"; his disagreements with his new stepmother regarding his mother and his desire to live with her; and his fear of respondent due to respondent's alcohol dependency and volatile nature. Scott's desire is certainly based on sound reasoning. The instant case is clearly distinguishable from *Shoff v. Shoff* wherein an eight-year-old child could not express a reason behind her desire for change.

■■ In reviewing the evidence, we believe that based on facts which have arisen since the 1985 judgment or were unknown to the court at the time of entry of the 1985 judgment, a change in circumstances has occurred. As the circuit court was in the best position to determine the needs of the child, we will accord great deference to that decision that a modification of the custody order was necessary. We cannot find that the circuit court abused its discretion.

For the foregoing reasons, the judgment of the circuit court of White County is affirmed.

Affirmed.

HARRISON and HOWERTON, JJ., concur.