*In re* MARRIAGE OF CHARLES STONE, Petitioner-Appellant, and REBECCA STONE, Respondent-Appellee.

Fourth District   No. 4—89—0382

Opinion filed November 30, 1989.

Brown, Hay & Stephens, of Springfield (Almon A. Manson, Jr., of counsel), for appellant.

James Alexander Pappas, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:
Petitioner, Charles Stone (Charles), appeals a modification of the judgment of dissolution of his marriage to Rebecca Stone (Rebecca). That modification increased his child support payments. Charles contends that there was no substantial change in his circumstances warranting the increase in his payments. We disagree with that argument, but conclude that the court erred in determining Charles' net income for purposes of determining a new support order.

At the hearing on Rebecca's motion to modify child support payments, the evidence revealed that Charles' net income increased from $10,775.93 in 1985, the year of the divorce, to $14,257.09 in 1988. Rebecca's net income also increased during this period from $9,522.28 to $16,996.08.

Rebecca testified that the costs associated with caring for Marissa, the minor child born during the marriage, had increased from 1985 to 1988. Rebecca estimated that monthly 1988 expenditures for food for Marissa were $133, a sum greater than the food expenses incurred in 1985 when the child was 1½ and consumed less expensive meals. Rebecca also testified that clothing expenses had similarly increased during this three-year period. Rebecca claimed to have spent between $600 and $750 on Marissa's clothing in 1988.

At the time of the hearing, Marissa attended a half-day of preschool, which cost $50 per month, and stayed with a babysitter for the other half of the day, who charged $40 per week. Rebecca attributed $40 of her utility bill to her child and testified that her rental payment had increased by $25 since 1986.

The trial court concluded that Rebecca was entitled to an increase in child support. Citing (1) the increase in the amount and types of food Marissa was consuming, (2) the costs of clothing and preschool tuition, both of which were nonexistent at the time of the divorce, and (3) Charles' salary increase, the court ordered the amount of child support to be increased by $71 per month, thereby requiring Charles to pay $196 per month in child support.

Under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act), a modification of child support may be made only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a); *Fedun v. Kuczek* (1987), 155 Ill. App. 3d 798, 801, 508 N.E.2d 531, 533.) In determining whether there is sufficient cause to modify, the court may consider both the circumstances of the parents and the circumstances of the child. (*In re Marriage of*

*Wettstein* (1987), 160 Ill. App. 3d 554, 561, 514 N.E.2d 783, 787, *appeal denied* (1988), 118 Ill. 2d 544, 520 N.E.2d 394.) If the court determines that a substantial change in circumstances has occurred, then the court should determine the amount of child support to be paid. In doing so, the court should follow the statutory guidelines set forth in section 505 of the Act, including those provisions for determining the noncustodial parent's "net income" under section 505(a)(3) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3)).

■ The modification of child support payments lies within the sound discretion of the trial court and, absent abuse of discretion, will not be disturbed on appeal. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *Fedun*, 155 Ill. App. 3d at 802, 508 N.E.2d at 534.

■ The circumstances of the instant case show that the trial court did not abuse its discretion when it increased Charles' child support payments. Charles' salary increased by 32% during the relevant three-year period. This is a factor favoring an increase in child support payments. (*In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 73, 441 N.E.2d 1221, 1229.) The increase in the child's expenses since the divorce should also be considered. In *Fedun*, this court determined that the twofold increase in the costs of raising a child showed a substantial change in circumstances. (*Fedun*, 155 Ill. App. 3d at 802, 508 N.E.2d at 534.) Other courts have presumed that the needs of a child have escalated simply because he has grown older and the cost of living has increased. *Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 1001, 367 N.E.2d 512, 513.

The testimony in this case demonstrates the increased cost of raising Marissa. The evidence presented regarding Marissa's food, clothing, baby-sitting, and preschool expenses provides sufficient grounds for the trial court's modification of Charles' child support obligation.

■ Charles further contends that the trial court erred in calculating his net income. Section 505(a)(3) of the Act defines "net income" as all income from all sources minus certain deductions, one of which is dependent and individual health-hospitalization insurance premiums (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3)(f)). Specifically, Charles argues that under section 505(a)(3)(f), the court should have deducted the total cost of his health insurance, $1,969.82, from his income. The health insurance benefitted Charles, his present wife, and his dependents, as well as Marissa. The court disagreed with Charles, relying upon section 505(a)(4) of the Act, which states:

"(4) In cases where health/hospitalization insurance coverage is not being furnished to a child to be covered by the support

order, the court may order the party from whom support is sought to provide such coverage when a child can be added to an existing insurance policy at reasonable cost. Net income shall be reduced by the cost thereof in determining the minimum amount of support to be ordered." (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(4).)

The trial court determined that it would

"read [section] 505(a)(3)(f) in conjunction with [section] 505(a)(4) and [make] a determination that perhaps what they're talking about is the amount that they're actually allocating to the child since that's specifically what they did under (a)(4) when you didn't have insurance."

Accordingly, the trial court gave Charles a deduction of only $984.91, half the amount he was paying for health-hositalization insurance, in calculating his net income for the purpose of setting his child support obligation. The court determined that only $984.91 of the $1,969.82 Charles was paying for health-hospitalization insurance benefitted Marissa. The court ordered that no credit was to be given to Charles for sums paid by him for the health-hospitalization insurance for himself and his current dependents.

■ The trial court incorrectly construed the relevant provisions of section 505. The language of section 505(a)(3)(f) should not have been read in conjunction with section 505(a)(4). Section 505(a)(3)(f) is clear on its face and does not indicate that only the child's share of the insurance premiums should be deducted. Instead, the statute allows for the deduction of all "health/hospitalization insurance premiums." As a result of this incorrect calculation, Charles' child support obligation was set $16 per month higher than it should have been.

Additionally, we note that section 505(a)(4) (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(4)) is inapplicable to the present case. That section addresses the situation where health insurance is not being provided to the child. However, in this case Charles has already included Marissa under his health insurance coverage.

Accordingly, we affirm the trial court's judgment modifying Charles' support order, but reverse its determination of the sum Charles is to pay; we remand this cause with directions that the trial court enter an amended order to reflect a child support obligation for Charles of $180 per month.

Affirmed in part; reversed in part and remanded with directions.

McCULLOUGH, P.J., and SPITZ, J., concur.