THE PEOPLE *ex rel.* PATRICIA ROBINSON HINES, Plaintiff-Appellant,
v. ROBERT HINES, Defendant-Appellee.

Fourth District   No. 4—91—0578

Opinion filed October 29, 1992.

COOK, J., dissenting.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of Chicago, of counsel), for appellant.

No brief filed for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Patricia Hines was divorced from defendant Robert Hines in April 1977 in the circuit court of Macon County. She received custody of their two minor children, Brandy and Teric. Defendant was ordered to pay child support payments of $40 per week.

This case has a lengthy history, most of it involving defendant's failure to pay child support payments. In September 1980, plaintiff filed a petition for rule to show cause, alleging that defendant was in arrears $2,070 for child support payments. He was ordered to make a lump-sum payment toward arrearage, execute a wage-deduction order for payment of his current support obligation, and pay an additional $20 per week toward the arrearage.

In January 1981, plaintiff filed another petition for rule to show cause, alleging that defendant had failed to make the lump-sum payment as required or to comply with the order concerning deduction of child support payments from his wages. She alleged that his arrearage had increased to $2,270. Defendant was once again ordered to execute a wage assignment. He was also ordered to make a lump-sum payment toward the arrearage. The wage assignment was executed, and the record shows it was delivered to defendant's employer, Borg Warner.

In March 1988, plaintiff filed a petition in two counts. Count I asked that defendant be held in civil contempt and alleged that he was $12,590 in arrears on his child support payments. Count II asked for an increase in child support, which the court ultimately granted,

increasing support to $65 per week. Defendant was ordered to pay an additional $35 per week toward his arrearage. An order for withholding was entered and served on defendant's then employer, Sam Tanksley Trucking, Inc. Defendant was ordered to notify plaintiff within seven days of all subsequent changes in his employment status.

In August 1988, plaintiff filed yet another petition for rule to show cause, alleging that defendant had not complied with the prior order and was in arrears $595 for current support payments and $315 on arrearage payments. She also alleged that defendant had failed to notify her of an employment status change. The record indicates defendant failed to appear at the hearing on this petition and a body attachment was issued. Defendant was arrested and posted $500 cash bond. The court found that defendant had failed to comply with the prior order. He was ordered to make a lump-sum payment on the arrearage, continue making current support payments, and continue payments on the arrearage. He was also ordered to pay plaintiff's attorney fees. The record contains a certificate that an order for withholding was served in April 1989 on defendant's new employer, K.O. Enterprises, Inc. A handwritten note filed in June 1989 in the record, signed by the bookkeeper of defendant's employer, indicated that defendant had voluntarily resigned his employment. A certificate in the record indicates an order for withholding was served on defendant's new employer, Owen Mathias Trucking, in September 1989.

In December 1989, plaintiff filed a petition for adjudication of civil contempt, alleging defendant had failed to pay her attorney fees as required. Defendant appeared and stipulated to a finding of contempt. He was ordered to pay additional amounts in attorney fees. The record shows he did eventually pay the fees.

In October 1990, an order was entered requiring the circuit clerk to remit defendant's child support payments as directed by the Illinois Department of Public Aid, division of child support enforcement (Department), for transmittal to plaintiff (who had become a Title IV-D nonassistance client of the Department).

In November 1990, the State's Attorney filed a petition for adjudication of civil contempt on behalf of plaintiff. The petition alleged that defendant had amassed a total child support arrearage of $18,265, and it asked that he be held in contempt and sentenced to jail. In February 1991, defendant filed a petition asking that his current child support payments be reduced. The petition alleged that defendant had been unemployed for lengthy time periods since entry of the May 1988 order increasing his child support payments to $65 per week. It alleged defendant was currently employed, but he was

earning much less than he was at the time that order was entered. It also alleged defendant was supporting two other minor children and that the parties' daughter Brandy had reached the age of majority and was not a full-time student. The petition asked for a reduction in child support payments and for termination of support for Brandy. In response to plaintiff's petition for civil contempt, defendant asked that the petition be dismissed because of his inability to make payments under the existing order.

A hearing was held February 15, 1991, on the contempt matter. Defendant testified on cross-examination by the assistant State's Attorney that he had been working part time for about three weeks (about 25 hours per week) driving a truck. His last net weekly paycheck was $128. Prior to that, he worked for Eric Smith Trucking, where he had worked 50 hours per week since March 1990. He quit this job because he could not get along with the boss. He made between $200 and $400 per week, and his W-2 statement showed gross wages of almost $16,500 for 1990. Prior to that, he had worked at yet another trucking firm for about a year and, before that job, he had worked at K.O. Enterprises for about a year. He worked at another trucking company for about two years prior to this. Generally, he made between $200 and $400 per week at these jobs. Defendant admitted he had left each of these jobs shortly after the employers were served with orders to withhold child support payments. He paid child support payments voluntarily for only a couple weeks after he left these jobs. He also admitted he had no excuse for not notifying plaintiff of his changes in employment. Defendant admitted he quit these jobs because he felt he could not afford the child support payments being deducted from his paychecks. He also admitted his arrearage exceeded $18,000.

When questioned by his counsel, defendant denied he had quit his prior jobs to avoid paying child support payments. He said he had better job prospects each time. He testified that he was sometimes laid off. He was making $450 per week at the job he had at Borg Warner at the time of the divorce. He said he was laid off in 1982 and worked odd jobs for about five years after that. At times he made $150 per week doing this. In 1987, he worked at the Holiday Inn making $175 per week.

Defendant admitted he had made no child support payments since April 1990 and that he had continued to work at Eric Smith Trucking until he took his current job. He testified he is remarried and has four children (three are foster children) in his home. He does not support

the foster children, as the State pays for their care. The other child (two years of age) is his child by his current wife.

At the conclusion of this hearing, the court found defendant to be in contempt. It made the following findings:

"THE COURT: Show evidence heard. Finding by the court this is a flagrant case of contempt and there is an arrearage of over $17,000. Finding by the court he has not ma[d]e any payments on child support since April of 1990 and during the year of 1990 he had a gross income of $16,000. Finding by the court he has willfully tried not to pay child support for a number of years. Wherefore, Defendant is held in contempt of court. He is sentenced to the county jail immediately for a period of 90 days. He may purge himself by paying $2,000 on the child support. So, sir, I sentence[ ] you to the county jail for 90 days. I'm going to get your attention and some other people's in the community attention. Your[ ]s was a flagrant case so you are the one that's going to jail. You can post $2,000 and get out of jail. Sheriff, here's the order. Take him away."

The record shows defendant paid the required $2,000 and thus purged himself of contempt.

A hearing was held on April 26, 1991, on defendant's petition to reduce child support payments. Defendant testified he was still working for the same company. His average weekly net pay was $225. He was still working part time, although he hoped the job would shortly become full time. He and his wife received approximately $900 per month for the foster children in their home. His daughter Brandy was 18 in November 1990, and she had graduated from high school and was employed. We note defense counsel attempted to question defendant about his financial affidavit, but was unable to do so because the affidavit was completed at a time when defendant was employed by Eric Smith Trucking. There was no evidence offered regarding the needs of Teric, nor was any evidence produced as to plaintiff's income. At the conclusion of the hearing, defense counsel stressed the reduction in defendant's income due to his change of employment and the existence of the minor child of defendant's present marriage. Counsel suggested an appropriate support order for Teric would be $28.13 per week, or 12½% of defendant's net weekly income (rather than the statutory minimum 20% guideline for one child). He arrived at this conclusion in the following manner: $225 (net weekly average income) x 25% (statutory minimum guideline support for two children) = $56.25 per week; divided in half = $28.13. The court questioned the assistant State's Attorney regarding plaintiff's current employ-

ment. She responded that she believed plaintiff's financial affidavit was in the court file. The court then stated it thought defense counsel's suggested payment might be a "little high. We've got to consider the social good that is going on at that home of the 3 children. I don't want him to lose this job." The assistant State's Attorney then reminded the court that efforts to collect child-support payments from defendant had been largely unsuccessful in the past because of defendant's successful avoidance of enforcement. She stated her belief that defendant's change of employment was not in good faith. The court found there had been a substantial change in circumstances, that defendant's income had been reduced, and that he had another child to support. Support was reduced to $28 per week for current support and $12 per week on the arrearage. An order for withholding was to be issued.

Plaintiff filed a motion to reconsider. In that motion, she alleged the court had failed to make written findings for deviating from the child support guidelines as set forth in section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)). The motion also alleged that the court had abused its discretion in setting defendant's child support payments below the guidelines and that its decision was contrary to law.

A hearing was held on this motion. At this hearing, defendant testified that he was still working only part time for the same employer. Three pay stubs produced by defendant showed net weekly income of $150, $195 and $259. He stated his average net weekly pay was $250. At the conclusion of this hearing, the court found there had been no substantial change of circumstances and denied the motion for reconsideration. This appeal followed.

Initially, we note that defendant as appellee has not filed a brief in this court. Therefore, we review this case in accordance with the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495. We reverse and remand.

Modification of child support payments lies within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 912, 483 N.E.2d 692, 696.

Petitions to modify child support payments are determined in accordance with section 510(a) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)). That subsection provides that support may be modified only upon a showing of a substantial change in circumstances. The

burden of demonstrating such a change is on the party seeking modification. (*In re Marriage of Lyons* (1987), 155 Ill. App. 3d 300, 304-05, 508 N.E.2d 458, 461.) Once a determination is made that modification is warranted, the court should consider the factors set forth in section 505(a) of the Act. (*Lyons*, 155 Ill. App. 3d at 305, 508 N.E.2d at 461-62; *In re Marriage of Stadheim* (1988), 170 Ill. App. 3d 19, 24, 523 N.E.2d 1284, 1287.) The court should also consider the child support guidelines set forth in that section as part of its modification analysis. Such an approach comports with the principle that courts consider the same factors they considered in formulating the original support order. *In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 326, 523 N.E.2d 573, 579.

The formula in sections 505(a)(1) and (a)(2) of the Act to be used in determining child support payments provides in part:

"(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |

\* \* \*

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court orders a lower award, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, it shall make express findings as to its reason for doing so." Ill. Rev. Stat. 1989, ch. 40, pars. 505(a)(1), (a)(2).

Plaintiff argues on appeal that the trial court erred in failing to make express findings as required by section 505(a) of the Act to support its deviation from the established child support guidelines. She also argues the court erred in reducing defendant's child support payments to a level below the 20% guideline for one child.

■ Section 505(a)(2) of the Act provides that the court may deviate from the established child support guidelines only after hearing evidence on all relevant factors. While the court may consider other factors which may be relevant in a particular case, it must consider all the relevant factors which are set forth in the statute if it makes a child support award below the 20% guideline. (*In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 681, 545 N.E.2d 459, 470.) We find no indication in the instant case that the trial court complied with this mandate. The court only heard evidence as to defendant's reduced income and the fact he has another minor child to support. The court heard no evidence regarding any of the other factors enumerated in section 505(a) of the Act. Its decision reducing defendant's child support payments below the 20% minimum was based upon reduced income and another child. While these are relevant factors, the court cannot pick out one or two factors on which to base its decision and not hear evidence on other relevant factors. For example, it is an abuse of discretion to set child support payments based only upon one party's income. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1115, 421 N.E.2d 1308, 1313.) The court here heard no evidence as to the needs of Teric. It heard no evidence of plaintiff's income or financial needs. At the hearing on the modification petition, the assistant State's Attorney referred to a financial affidavit completed by plaintiff which is not contained in the record on appeal. However, even assuming that her affidavit contained current information, it is apparent the court did not consider it. In addition, it appears from the record that the only current financial information the court had from defendant was as to his reduced income. Defendant's financial affidavit was completed while he was working for a previous employer. Thus, although the court could have relied on defendant's testimony as to his income, no evidence was produced relating to defendant's financial needs. Therefore, we find that the trial court abused its discretion in failing to consider all relevant factors in its determination to reduce defendant's child support payments below the established guidelines.

Section 505(a)(2) of the Act also requires the court to make express findings when a support order is entered that deviates from the guidelines. In the instant case, the trial court found that defendant's income had been reduced and that he has another child to support. However, as indicated above, since the trial court heard no evidence on the other relevant factors, the findings it did make were insufficient to support its determination.

■ Plaintiff urges us to find the trial court abused its discretion by reducing defendant's child support payments to below 20% of his net income. Since the court did not hear evidence on many of the statutory factors, and since it did not make the requisite express findings necessary to support such a deviation, we cannot determine whether a reduction below 20% would be an abuse of discretion in this case. Clearly, however, it is not permissible to apply a mechanical formula such as the one suggested by defense counsel and as apparently adopted by the trial court in making its decision. There is no statutory support for such a formula. *Cf. Stockton,* 169 Ill. App. 3d at 327, 523 N.E.2d at 580 (finding the trial court was justified in deviating from the guidelines, but that it abused its discretion by computing child support payments on a ratio of the parties' incomes).

■ It also appears the trial court may have based its order on factors not relevant to its determination. In reducing defendant's child support payments, the court commented that it had to consider the "social good" defendant and his wife were doing by caring for three foster children. It also expressed a concern that defendant not lose "this" job, presumably referring to the foster care. There is no support in the record for the belief that the trial court's decision on child support payments should be affected by defendant's foster children. As defendant himself testified, he has no financial responsibility for them because they are provided for by the State. Thus, on remand, defendant's foster children should not be a consideration in the court's child support payment decision.

Finally, we point out one other factor to be considered by the trial court upon remand to determine whether a reduction in defendant's child support payments is warranted. We note that aside from the emancipation of his oldest child, defendant's petition for reduction of child support payments was based upon his reduced income, which was brought about by a change in employment. While a voluntary change in employment may constitute a change in circumstances sufficient to support a modification of a child support order, that change must have been made in good faith. The crucial consideration in determining whether the change was made in good faith is whether the change was prompted by a desire to evade financial responsibility for supporting one's children or to otherwise jeopardize their interests. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790.) This necessitates an inquiry into the question of motive in making the employment

change. (*Cohn v. Cohn* (1984), 122 Ill. App. 3d 763, 766, 461 N.E.2d 1028, 1031.) The assistant State's Attorney brought the good-faith issue to the court's attention at the modification hearing, but a review of the record does not indicate the court considered it. While not expressing a view on the merits of the issue in this case, we note that it is a proper factor to consider, especially in light of evidence presented at the earlier hearing on plaintiff's petition for contempt and the court's express finding after this hearing that defendant had wilfully tried not to pay his child support payments for a number of years.

We are well aware, as stated in the dissent, that information as to many of the elements to be considered by the court in considering modification of child support was within plaintiff's control. However, the burden was on defendant to sustain his motion for reduction, and inherent in the determination of the change is the consideration of the relevant factors as set forth in section 505(a)(2) of the Act. The defendant, in seeking modification, cannot escape the court's consideration of these factors by plaintiff's failure to come forth with evidence. Any other holding would make a mockery of the child support provisions.

The order of the circuit court granting defendant's petition for modification is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent, and would affirm the order appealed from.

A petition to modify child support is often a response to a petition for a rule to show cause. The fact the obligor is found to be in contempt does not require denial of the petition to modify. A partial inability to pay support, although not a defense to contempt, may still justify modification. (See, *e.g.*, *In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 688-90, 548 N.E.2d 139, 141-42; *In re Marriage of Scordo* (1988), 176 Ill. App. 3d 269, 273, 530 N.E.2d 1170, 1172.) In this case defendant was found in contempt, not because he failed to pay the full amount of child support and arrearages each week, but because he failed to pay anything since April 1990, while he had gross income in 1990 of $16,000.

An order awarding child support may be modified "upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) If the court determines that a substantial change in circumstances has occurred, the court should set a new amount by following the statutory guidelines set forth in section 505 of the Act. (*In re Marriage of Stone* (1989), 191 Ill. App. 3d 172, 174, 547 N.E.2d 714, 715; *cf. Stockton*, 169 Ill. App. 3d at 325, 523 N.E.2d at 578 (consider the factors set forth in section 505(a)(2)); see also *In re Marriage of Rogliano* (1990), 198 Ill. App. 3d 404, 411, 555 N.E.2d 1114, 1118 (statutory factors in section 505(a)(2) are not to be considered if court follows guidelines under section 505(a)(1)).) The majority does not dispute the trial court's finding there was a substantial change in circumstances in this case, and would affirm a reduction in child support—just not this reduction below 20% of net income.

The amount computed from the guidelines "shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines." (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).) If the court deviates from the guidelines "it shall make express findings as to its reason for doing so." (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).) The legislature has required that a court which modifies or terminates joint custody "shall state in its decision specific findings of fact in support" of its decision, but has not required that findings justifying a deviation from the child support guidelines be written, or incorporated in the court's order. (Ill. Rev. Stat. 1989, ch. 40, par. 610(b); *cf. In re Marriage of Wright* (1991), 212 Ill. App. 3d 392, 399, 571 N.E.2d 197, 201.) The majority properly concludes the trial court's findings were sufficiently "express" here, but the majority concludes the findings were insufficient to support the modification.

The trial court in fact did not deviate from the guidelines, because there are no guidelines which apply to the specific facts of this case, where defendant has another child by a second marriage. Plaintiff argues the guidelines percentage for one child, 20%, should be used to set support. If the guidelines were stretched so as to apply in this case, however, the more appropriate percentage would be 25%, as defendant has two children, not one child. Of course plaintiff would not be entitled to the entire 25%, as she has custody of only one of defendant's children.

The guidelines do not address every possible situation. For example, they make no provision for situations where custody is split

between the parties, or where a party is responsible for the support of children from other marriages. (*In re Marriage of White* (1990), 204 Ill. App. 3d 579, 582, 561 N.E.2d 1387, 1389; *In re Marriage of Werner* (1986), 144 Ill. App. 3d 263, 267-68, 493 N.E.2d 1199, 1202; see *Carnes v. Dressen* (1991), 215 Ill. App. 3d 166, 170-71, 574 N.E.2d 845, 847-48.) When the guidelines of section 505(a)(1) do not specifically apply, there is a question whether the court should abandon them completely and decide the case based on traditional factors for determining child support, or begin with the amount stated by the guidelines and make some adjustment as the situation requires. In *In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 599, 493 N.E.2d 666, 671, the supporting spouse, the father, had custody of one child, the mother custody of the other. The trial court there did what the trial court did here: took the guidelines amount for two children, 25%, and divided that in half, to set child support at the dollar equivalent of 12½% of the father's net income. The appellate court affirmed, stating it was unable to conclude the award was an abuse of discretion. (A problem with just splitting the guidelines amount is that while 25% may be enough to raise two children in one household it may not be enough to raise two children in separate households.) This court has recognized that a trial court may utilize the *Flemming* approach, but suggested that the factors set forth in section 505 of the Act be considered. *White*, 204 Ill. App. 3d at 582, 561 N.E.2d at 1389; see also *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 281, 411 N.E.2d 950, 953 (division of college expenses in proportion to income of parties approved).

The majority criticizes the trial court for not hearing evidence on the needs of Teric, or on plaintiff's income or financial needs. The majority complains that no evidence was presented by defendant as to defendant's financial needs. The statement that the trial court did not hear evidence is misleading. The trial court did not refuse to hear any evidence; the trial court listened to all evidence the parties chose to introduce. It is the burden of the parties, not the trial court, to present evidence in cases arising under the Act. (*White*, 204 Ill. App. 3d at 582, 561 N.E.2d at 1389; *In re Marriage of Falat* (1990), 201 Ill. App. 3d 320, 329, 559 N.E.2d 33, 39 (failure to offer evidence creates presumption that evidence would be unfavorable); *Stockton*, 169 Ill. App. 3d at 324, 523 N.E.2d at 578 (burden of providing evidence on net income lies with the parties and not with the court).) A burden of cross-examining witnesses also rests on the parties. (*White*, 204 Ill. App. 3d at 582, 561

N.E.2d at 1389.) Reviewing courts cannot continue to reverse and remand cases arising under the Act where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review from their failure to introduce evidence. *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54-55, 448 N.E.2d 545, 550 (a property division case); *In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 90, 458 N.E.2d 1360, 1363.

Defendant could have presented more evidence on his petition to modify, but he did present enough evidence to establish a *prima facie* case, enough evidence to justify modification in the absence of evidence to the contrary. It was plaintiff's obligation to present that contrary evidence, not the trial court's obligation. This case was prosecuted by the State's Attorney's office for the Department, and although plaintiff was present for the hearing on contempt, the assistant State's Attorney did not choose to have plaintiff present for the hearing on the petition to modify, or even for the motion for rehearing. The assistant State's Attorney did not attempt to present any evidence that plaintiff's income or Teric's needs had changed. The trial court could therefore assume that neither had changed. The responsibility of the State's Attorney to present evidence supporting the Department's case is no different from that of any other litigant. See *Cogan v. KAL Leasing, Inc.* (1989), 190 Ill. App. 3d 145, 154, 546 N.E.2d 20, 26 (mistake to skew rules of evidence or procedure in cases where minors or incompetents are involved).

The majority says there is no indication in the record that the trial court considered other factors, or that the court considered whether defendant's change of jobs was in good faith. It is not the duty of the trial court to prove to us its decision is correct. Rather it is our duty to affirm unless appellant has convinced us the trial court's decision is wrong. A reviewing court will extend all reasonable presumptions in favor of the judgment or order from which the appeal is taken, and will not presume that error occurred below. (*Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345-46, 459 N.E.2d 651, 654; *In re Marriage of Frazier* (1990), 205 Ill. App. 3d 621, 625, 563 N.E.2d 1236, 1239; *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 114-15, 559 N.E.2d 819, 829.) The majority says that it cannot determine whether a reduction below 20% would be an abuse of discretion in this case. If we cannot say the trial court was wrong we should affirm.

The argument that the trial court committed reversible error is an unusual one. That argument is found in the paragraph of the

majority opinion which begins: "Section 505(a)(2) of the Act provides that the court may deviate from the established child support guidelines only after hearing evidence on all relevant factors." (236 Ill. App. 3d at 746.) The language of section 505 indicates the legislature intended for the guidelines to apply unless there was a reason for deviation, but I see no indication that the legislature intended to change the way a trial court hears evidence, makes its decisions, or the deference we give those decisions on review. There is no legislative mandate that the trial court's failure to consider a relevant factor, not raised by the parties, requires reversal of a child support order.

Although the traditional rule is that modification of child support requires consideration of the needs of the child and the abilities of the parents, that rule is not an inflexible one. The guidelines have brought a whole new way of thinking to the setting of child support. Once a court determines that the guidelines should be applied, the court does not consider the income of the noncustodial parent, or the particular needs of the child; the only variables considered by the court are the number of children and the net income of the party responsible for support. The arbitrary nature of fixing support by the use of guidelines was the criticism expressed in the case cited by the majority, *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308 (before section 505 incorporated guidelines, improper to use Cook County guidelines); see Ill. Ann. Stat., ch. 40, par. 505, Supplement to Historical and Practice Notes, at 176 (Smith-Hurd Supp. 1992) ("The enactment of these support guidelines in Illinois reversed a well-established line of Illinois Appellate Court decisions which held that the use of guidelines, charts or standard rates is improper in determining child support, since they do not satisfy the requirement of accommodating the needs of the children with the available means of the parents").

Even using the factors, a court may increase support based on the noncustodial parent's increased ability to pay, even though the child's needs have not increased. (*Wilson v. Wilson* (1988), 166 Ill. App. 3d 1035, 1038, 520 N.E.2d 1230, 1232; *In re Marriage of Bean* (1989), 181 Ill. App. 3d 671, 674, 537 N.E.2d 342, 344.) The trial court need not consider the income of the respondent on a petition to modify child support where the respondent does not take advantage of his opportunity to introduce such evidence. (*Falat*, 201 Ill. App. 3d at 328-29, 559 N.E.2d at 39.) The court may presume the expenses of raising children increase each year as the children grow older and the cost of living rises. *Stone*, 191 Ill. App.

3d at 174, 547 N.E.2d at 715; *Falat*, 201 Ill. App. 3d at 327, 559 N.E.2d at 38.

The majority criticizes the trial court for considering irrelevant factors, including the concern that defendant not lose "this" job. I understand the trial court to refer to defendant's present job, as a truck driver. I disagree the trial court thereby considered any improper factor, and suggest the trial court understood this case better than a reviewing court ever could. There is a nationwide concern that child support orders are inadequate, and poorly enforced. (See *People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 270, 529 N.E.2d 542, 544.) There are risks, however, if a court takes a one-sided approach to setting child support. An award which is too high guarantees its own failure, creating future problems not just for the obligor, but for the obligee, the courts, and the Department. I agree defendant's support of the foster children was of only minimal relevance, but the trial court properly considered defendant's ability to support his child by his second marriage, a factor under section 505(a)(2)(e) of the Act. The argument that the first child is entitled to the full guidelines amount of 20% before the needs of the second child may be considered is wrong in policy and in law, and may violate equal protection. (See *Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 948-49, 414 N.E.2d 77, 83-84; see *Rawles v. Hartman* (1988), 172 Ill. App. 3d 931, 934, 527 N.E.2d 680, 681 (support obligations extend equally to every child).) The trial court was properly concerned that defendant keep working, as well as that he support his child by his first marriage and his child by his second marriage. Based on the evidence presented, the trial court's decision was a reasonable one.

A reviewing court will not find an abuse of discretion unless no reasonable person would agree with the trial court's decision. (*In re Marriage of Jacks* (1990), 200 Ill. App. 3d 112, 118, 558 N.E.2d 106, 110 (a marital property case).) Great deference must be accorded the decision of the trial judge, who is in the best position to judge the credibility of the witnesses and determine the needs of the child. (*In re Marriage of Valter* (1989), 191 Ill. App. 3d 584, 588, 548 N.E.2d 29, 31 (a custody modification case).) If it is true that the modification of child support payments lies within the sound discretion of the trial court, we should affirm the order appealed here.